Jackson, J.
As to the first point, we see no sufficient objection to Mr. Kingsbury as a witness. The case of one sovereign becoming a party in the judicial courts of another is novel, and perhaps wholly unknown in the common law. But we constantly find the sovereign, both here and in Great Britain, a party in suits in their own courts; and it was never imagined that all the citizens or subjects of the government were incompetent witnesses in such suits because the government might be enriched by them.
As to the letter of J. &f H. Dwight, which was read in evidence, it is not very important to consider the question; because, on the new trial, which must be had in this case, one or the other of the parties can undoubtedly produce such evidence as will put it out of doubt. It appears, however, to us, that the letter was properly admitted at the trial, upon the evidence that was then offered of its authenticity.
The third is the most important point in this case; and upon that we are, on the whole, satisfied that there ought to be a new trial. A person who takes a conveyance of land, with knowledge that the grantor had previously conveyed it to another, cannot hold it against the first purchaser, even though the first conveyance is not recorded. It would be fraudulent in him to attempt thus to deprive the purchaser of the fruits of his contract. If the grantor can be considered as having any title or estate after the first conveyance, it is merely the legal estate which he holds in trust for the first purchaser; and the second, purchasing with knowledge of the trust, shall hold subject to the same trust. But if the second purchaser procures his deed to be recorded before the other, and then sells the land bona fide, and for a valuable consideration, to a person wholly ignorant *259 of those circumstances, the latter will hold the land against the first purchaser.
If this were not so, our laws, which require the registering of deeds, would be useless, if not worse; because * a purchaser, after the most thorough examination in the registry of deeds, and finding a succession of conveyances, all in legal form and in perfect order, might still be evicted upon proof of a secret trust, or a fraud, on the part of some former owner.
We can see no difference in the application of these principles, when the conveyances are absolute, and when they are made as a pledge or security for a debt. A mortgage furnishes no security for a debt unless it enables the grantee to hold the land absolutely, if the debt is not paid, in the same manner as he would have held it if the original conveyance had been without condition.
The question in this case has no connection with the principles which regulate the assignment of a chose in action. If Thurher had given a bond to the Dwights, with a mortgage to secure it, and the Dwights, before their assignment to Bradish, had received payment of the bond, or had given a defeasance of it, Bradish, as assignee, would be bound by those acts, although they had been wholly unknown to him. This is the whole effect of the case of Chite vs. Robison, which was cited in the argument. It is true that, if by any such defence the assignee is prevented from recovering the money appearing to be due on the bond, he will also lose all benefit from the mortgage. But this arises, not from any defect in the title to the land, or in the manner of conveying it, considered by itself; but is only an incidental consequence of the discharge or avoidance of the bond for which the land is pledged.
So, if the notes given by Thurber to the Dwights had been overdue at the time of the assignment, Bradish would have taken the notes, subject to any defence that could be made to them by Thurber; and if such a defence should prevail, it would virtually defeat and avoid the mortgage in the hands of Bradish. But if the money expressed in the notes is due, and payable to Bradish, by force of the assignment to him, the question whether he shall hold the land as security for that money must be decided like any other question relating to the same land.
* The only case cited in the argument, which seems to militate with our opinion upon this point, is that of Walley vs. Walley & Al., in 1 Vern. 484. This case is cited by Powell on mortgages, as showing that the assignee of a mortgage will be affected by notice to the assignor of an outstanding title to the land mortgaged, and will take subject to that title. The case furnishes no authority to that point. It was proved that the assignee, *260 at the time of the assignment, had actual notice of the outstanding title, and therefore this question could not arise; and accordingly it is not noticed in the opinion of the court. It was, indeed, contended in that case, by the counsel for Warner, one of the defendants, that, although it was proved that he had notice of the outstanding title, yet that it did not appear that his assignor {Gandy, another defendant) had such notice. To this it was answered, by the counsel for the plaintiff, that, as Warner had purchased with full notice, he could not defend himself as an innocent purchaser; and that, if he would mend his case on the pretence that Gandy, his assignor, had no notice, he must stand in Gandy’s place ; and then the confession of Gandy, (in his answer to the same bill,) that he had notice, would bind Warner. This argument of the plaintiff’s counsel, if it had been adopted by the court, would by no means prove that if Warner had had no notice himself, and was defending himself as an innocent purchaser, he would be affected by such notice to his assignor.
It was further said, in the argument of the case at bar, that the deed under which the demandants claim being registered before the assignment to Bradish, although after the conveyance to the Dwights, Bradish might and ought to have known that there was a prior conveyance.
This is at most only evidence to show that Bradish did know the fact; and if, from this or any other legal evidence, the jury should find that he did know it, his title would be void as against the demandants; or rather his mortgage would be postponed to theirs.
But we certainly cannot say that he shall be presumed, * from this circumstance, to know of the prior conveyance.
When a purchaser is examining his title in the registry of deeds, and finds a good conveyance to his grantor, he is not expected to look further. This case, it is true, presents the question in a very strong point of view for the demandants ; as Bradish had only to look to the registry for the next day, and perhaps only to the next page, to discover this prior conveyance to the demandants. But if he is required to look one day, or one page, beyond that which ex-nibits the title of 'his grantor, it will be impossible to say where the inquiry shall stop. The verdict is set aside, and a

New trial granted, 
(a)

 [Somes vs. Brewer, 2 Pick. 184 —Hall vs. Bigelow, 16 Mass. Rep. 406. — Ed ] 260