## PAUL R. GEORGE *versus* JOHN KIMBALL.

A debtor transferred his property to assignees in trust to sell it and apply the proceeds to the payment of a part of his debts, being much less than the amount of the property, and to pay over the surplus to himself. The assignees sold the property to the plaintiff, and acknowledged the receipt of payment by an obligation to furnish notes indorsed, and the defendant, as a deputy sheriff, attached it as the property of the assignor, at the suit of a creditor. In an action of replevin by the plaintiff against the attaching officer, the jury were instructed, that though there was an assignment of a large amount of property to secure a small amount of debts, so as to show such inadequacy of consideration as in ordinary cases would be a strong badge of fraud, still, if there were *bonâ fide* debts to be secured by the assignment, and if the provision for selling was a fair one, and if it was intended that the effect of the assignment should be to place the full value of the property in the hands of the assignees, so that the surplus, after satisfying the creditors under the assignment, could be reached by other creditors, in the hands of the assignees, by the trustee process, and the assignment was made in other respects in good faith, then the assignees took a valid title to the property, which passed to the plaintiff on the sale ; and in such case it would be immaterial whether the plaintiff paid for the property in cash or negotiable securities, or not ; and the officer was not entitled to judgment for a return of any part of the property specifically. *Held*, that the instructions were correct.

A bond having been assigned by the obligee to trustees for the benefit of his creditors, and the trustees having brought an action upon it, but in the name of the obligee, and attached property supposed to belong to the obligor, it was *held*, that the trustees were incompetent, by reason of interest, to testify in an action of replevin brought by a stranger, claiming the property, against the attaching officer.

THIS was an action of replevin against a deputy sheriff, of certain merchandise attached by him at the suit of one Neally, on a writ against Thomas A. Ambrose.

At the trial, before *Shaw* C. J., the plaintiff exhibited a bill of parcels, dated October 9th, 1833, which purported that the goods were bought of Isaac O. Barnes and Thomas P. Goodhue, assignees of Thomas A. Ambrose, for the sum of $8265·38 ; of which payment was acknowledged in the following words : "Received payment by an obligation to furnish notes indorsed. Isaac O. Barnes, Thomas P. Goodhue, assignees of T. A. Ambrose."

No such obligation or notes were produced or proved to have been given, nor was there any other proof of any consideration paid by the plaintiff.

The plaintiff took possession of the property, which was the stock of goods in a store, on the day of the sale, and

continued in possession, and kept the store open, and had been selling the goods at retail, until the attachment was made.

It appeared in evidence, that this stock of goods formerly belonged to Neally, and that he sold the same to Ambrose, on the 23d of August, 1833, taking therefor notes on time for about $ 9000·00, accompanied with a bond to furnish security thereon on demand.

After this sale, Ambrose became indebted to other persons, for goods and money, in about the sum of $ 3200·00, and on the 1st of October, 1833, he made an assignment of the goods in question and some small debts, amounting in all to about $ 9000·00, to Barnes and Goodhue, in trust to pay certain creditors of Ambrose, of whom Neally was not one, and the charges of executing the trust, and then to pay over the surplus to Ambrose or his order. The debts due to the creditors thus secured were about $ 3200·00. Neally's demand was not mentioned in the assignment. The assignees took immediate possession of the property assigned.

It did not appear that Ambrose had any other property than that assigned, or owed any other considerable debts than those above named.

On the 12th of the same October, Neally having assigned his bond to Messrs. Lawrence, Hunter, and Wilson for the benefit of his creditors, a demand was made on Ambrose for security, and an action brought upon the bond, in which the goods were attached as above mentioned, as the property of Ambrose.

It was contended by the defendant, that the assignment to Barnes and Goodhue was actually fraudulent, and made with intent to defeat Neally's demand ; and to show that fact, evidence was given that some of the notes secured by the assignment were antedated, and given for larger amounts than were actually due ; and evidence was also given by the plaintiff, tending to show that the same were not given with fraudulent intent. The defendant also contended, and relied upon the circumstances attending the sale to George, to prove, that if there was fraud in the assignment, George knew of it when he bought the goods.

The defendant contended and requested the chief justice to charge the jury ;

George
v.
Kimball.

1. That if the assignment was actually fraudulent and made with intent to defeat creditors, the production and proof of the bill of parcels, receipted as aforesaid, was not, of itself, evidence of such a valuable consideration paid by the plaintiff, as would entitle him to hold the goods against the claims of the creditors of Ambrose, even though the plaintiff were ignorant of the fraud :

2. That if the assignment was fairly made, the value of the property so far exceeded the amount of the debts for which it was assigned, that the creditors of Ambrose would have had a right to attach the surplus specifically, and having attached the whole, and the plaintiff not having proved any valuable consideration paid by him, he could maintain his replevin for only so much as would have been necessary in the hands of the assignees, for the purposes of the assignment, and that there should be judgment for a return of such surplus :

The chief justice declined giving the specific instructions prayed for, but instructed the jury upon the several points as follows : —

That if the assignment from Ambrose to Barnes and Goodhue was made with an intent and design to defraud the creditors of Ambrose, or to delay them or defeat them of their rights, by inserting a fictitious amount of debt or otherwise, so as to prevent the creditors of Ambrose from availing themselves of the surplus, after applying the proceeds to the payment of debts due *bonâ fide*, or if there was any dishonest purpose to defraud the creditors of Ambrose, taken altogether, the conveyance was void, and the assignees took no valid title against the creditors.

But though there was a conveyance of a large amount of goods to secure a small amount of debts, so as to show inadequacy of consideration, even such inadequacy as, under the rules of law in ordinary cases, would be a strong badge of fraud, still this being a conveyance in trust for creditors, if there were debts of the creditors of Ambrose *bonâ fide* due and owing, to be secured by the assignment, and if the provision for selling and converting the goods into money was a fair one, and if it was intended the effect of the assignment should be to place the full value of the goods in the hands of

the assignees, so that the surplus, after satisfying creditors under the assignment, could be reached by other creditors in the hands of the assignees by the trustee process, and the assignment was made in other respects in good faith, then the assignees took a valid title to the goods, which passed to the purchaser on the sale ; and in this case it would be immaterial whether the plaintiff paid for the goods in cash or negotiable security or not. And in this case, the defendant had no right to judgment for a return of any part of the goods specifically. Had the officer attached a part of the goods by special designation, leaving enough in the hands of the assignees, or of George, as claiming under them, to cover the claims of all real creditors under the assignment, it would have presented a very different question. But here the defendant attached the whole, the pleas and issues go to the whole, and if the assignment is not wholly defeated the defendant is not entitled to a return.

In regard to notice to the plaintiff the instruction was this : That if the conveyance by Ambrose to the assignees was actually fraudulent, so that they took no valid title, even to the extent of the real debts of creditors intended to be secured by the assignment, and so that all the goods could have been attached, whilst remaining in the hands of the assignees, as the property of Ambrose, then if George had notice of the fraudulent conveyance, as he had made no payment, he took subject to the invalidity of the title of the assignees, and as the assignees had no valid title, George took none. But actual notice was not necessary, constructive notice would be sufficient.

The defendant offered the deposition of John M. Wilson. It was objected to as incompetent, on the ground that the deponent was interested. On inquiry the facts appeared thus. The writ upon which the goods were attached by the defendant was in the name of Greenleaf C. Neally, on a bond. It appeared by an instrument indorsed on the bond, that it had been assigned to Wilson and two other persons, by Neally, for the benefit of his creditors, and that this suit was brought in the name of Neally by the order and direction of the assignees. On this ground it was ruled, that Wilson was interested in the event of this suit, and his deposition was rejected as incompetent.

George
v.
Kimball.

The jury found a verdict for the plaintiff for the whole of the goods, and the defendant moved for a new trial. If the ruling or instructions above stated were erroneous, the verdict was to be set aside and a new trial granted.

Oct. 20th,
1836.

*F. Dexter, Lawrence* and *Smith*, insisted on the two points made by the defendant at the trial ; and in support of the first they cited, *Bailey* v. *Foster*, 9 Pick. 139 ; *Buffington* v. *Gerrish*, 15 Mass. R. 156 ; *Somes* v. *Brewer*, 2 Pick. 201 ; *Fletcher* v. *Peck*, 6 Cranch, 133 ; *Jackson* v. *Myers*, 11 Wendell, 538 ; *Root* v. *French*, 13 Wendell, 570 ; *Dickerson* v. *Tillinghast*, 4 Paige, 215 ; *Durell* v. *Haley*, 1 Paige, 492 ; *Lupin* v. *Marie*, 2 Paige, 169 ; *Coddington* v. *Bay*, 20 Johns. R. 637 ; *Hoxie* v. *Carr*, 1 Sumner, 192 ; *Potter* v. *Gardner*, 12 Wheaton, 502 ; *S. C.* 5 Peters, 718. In support of the second point they cited *Widgery* v. *Haskell*, 5 Mass. R. 144 ; *Borden* v. *Sumner*, 4 Pick. 265 ; *Boyden* v. *Moore*, 11 Pick. 362 ; *Gardner* v. *Dutch*, 9 Mass. R. 427.

*H. H. Fuller* and *Farley*, for the plaintiff, cited as to fraud, *Cadogan* v. *Kennett*, Cowp. 434 ; *Nunn* v. *Wilsmore*, 8 T. R. 521 ; *Foster* v. *Hall*, 12 Pick. 99 ; *Rowley* v. *Bigelow*, ibid. 312 ; *Bean* v. *Smith*, 2 Mason 272 ; and as to the admissibility of Wilson's testimony, *Butler* v. *Warren*, 11 Johns R. 57.

Jan. 21st,
1837, at
Boston.

MORTON J. delivered the judgment of the Court. The present is a question of property. The plaintiff claims the goods replevied, by virtue of a sale from the assignees of Ambrose, as whose property the defendant attached them. To defeat the plaintiff's title the defendant must show that the assignment was fraudulent, and that the plaintiff purchased with a knowledge of the fraud. Even if the assignment was fraudulent, yet an innocent purchaser would hold the property purged of the fraud. Under the instructions which were given to the jury, they necessarily found, either that the assignment was *bonâ fide*, or that the plaintiff was a fair purchaser, without notice of any prior taint.

A fraudulent conveyance of real estate is valid and passes the estate, and can only be impeached by creditors or purchasers of the grantor. 3 Mass. R. 575 ; *Drinkwater· v*

*Drinkwater*, 4 Mass. R. 354 ; *Ricker* v. *Ham*, 14 Mass. R. 137 ; *Goodwin* v. *Hubbard*, 15 Mass. R. 210.  And if a fraudulent grantee convey to a purchaser who is ignorant of the infirmity of the conveyance, he will hold the estate purged of the fraud.  *Gore* v. *Brazier*, 3 Mass. R. 541 ; *Inhab. of Worcester* v. *Eaton*, 11 Mass. R. 368 ; *Hills* v. *Elliot*, 12 Mass. R. 26 ; *State of Connecticut* v. *Bradish*, 14 Mass. R. 296 ; *Trull* v. *Bigelow*, 16 Mass. R. 416.  The same doctrine governs the sale of personal property.  Brown on Sales, 396 ; *Parker* v. *Patrick*, 5 T. R. 175 ; *Hollingsworth* v. *Napier*, 3 Caines's R. 186 ; *Mowrey* v. *Walsh*, 8 Cowen, 238 ; *Fletcher* v. *Peck*, 6 Cranch, 133 ; *Hussey* v. *Thornton*, 4 Mass. R. 405 ; *Gibbs* v. *Chase*, 10 Mass. R. 125 ; *Buffington* v. *Gerrish*, 15 Mass. R. 156 ; *Smith* v. *Dennie*, 6 Pick. 266 ; *Rowley* v. *Bigelow*, 12 Pick. 312 ; *Boyd* v. *Brown*, 17 Pick. 453.

These unquestioned principles are decisive of this case.  The assignment was not invalidated because the value of the property exceeded the amount of the debts presented under it.  Inadequacy of consideration, though indicative of fraud, is not conclusive evidence of it.  And in cases of assignment it can have but little weight, because the assignees are bound to account for the surplus, after the purposes of the *trust* have been accomplished.  The property, if the assignment was *bonâ fide*, all vested in the assignees.  The conveyance of a mass of property, consisting of a great variety of chattels, all owned by the vendor, could not be effectual to transfer a part, and not the whole.  It must be wholly good or wholly bad.  What articles shall pass to the assignees and what remain the property of the assignors ?  Who shall determine ?  And will its effective power increase as new creditors become parties, so that from time to time new articles will pass ?  Suppose the assignment to consist of one or two very valuable articles, a ship for instance, how will the principle operate upon such a conveyance ?

It is very clear, therefore, that if the assignment was valid none of the property remained in such a situation that it could be specifically attached as the property of the assignor.  If there was a surplus, the proper and the only mode of reaching

George
v.
Kimball.

it was by the trustee procees. And this would not interfere with the sale to the plaintiff, but would apply as well afterward as before.

As the property vested in the assignees, though in trust, for particular purposes which might not require the whole, they might lawfully sell the whole. It might be impossible to know whether the whole would be needed or not ; and probably the assignees would have a discretion when all is not needed, to sell the whole or a part, as they might judge most beneficial to all interested. And all that could be required of them, would be fidelity and ordinary diligence and discretion in the execution of the trust. But whether they sold the whole or a part, a purchaser from them would get a valid title to whatever he bought.

After a sale by the assignees, the absurdity of the principle becomes more obvious and palpable. The sale might be made to several. And in such case whose purchase should be valid and whose liable to be defeated by an attachment ? Must each of the creditors attach *pro ratâ*, or might the whole be taken from one purchaser ? But the defendant did right in attaching all the property assigned. If he can hold any, most clearly he can hold the whole. If any part of it vested in the plaintiff, all of it did.

But the defendant's counsel, without controverting the general doctrine which we have stated, have, with great learning and ingenuity, endeavoured to take the case out of it by the introduction of a principle of equity, a principle which is perfectly sound and has been adopted in law as well as chancery, and which has some seeming analogy, but no real application to the case before us. They contend, that as the plaintiff has never paid for the goods which he purchased, the sale may be avoided and the property taken from him ; that this would do him no injustice. The principle upon which they rely, and which may be found in the cases cited by them from Johnson, Wendell, Paige, Mason, Sumner, Wheaton, Peters and 15 Mass. R. 156, (*Buffington* v. *Gerrish*,) requires only to be plainly stated, to show its total inapplicability. It is merely this. Where goods are sold upon a condition, which is never performed, or are obtained from the owner by fraud and im-

position, so that there is but the form of a sale, without its essential elements, the innocent vendor may reclaim the goods, not only in the hands of the pretended vendee, but also in the possession of his creditors and purchasers. And the only exception to the rule is in favor of purchasers who have actually paid for the goods. They shall hold them. But if they have only given security for them or discharged an old debt by the purchase, they may be reclaimed by the owner, and when reclaimed the security becomes void and the old debt revives. In such sales the property does or does not pass, at the election of the vendor. It remains in the former owner if he chooses to annul the contract, and he may retake his own wherever he can find it. The rule is clear and sensible, and the only difficulty is to support the exception. How goods which never vested in the vendee, can be transferred by him, so as to give the purchaser a good title, is not easily explained on any legal principle. It must rest upon the equitable principle, that where one of two innocent persons must suffer from a fraud, the loss should fall on him through whose fault or negligence the fraud was committed, or who, by misplaced confidence or otherwise, enabled the fraudulent party to perpetrate the fraud. This principle does not apply with very great force, but may be considered sufficient for the purpose. It is somewhat analogous to the doctrine of the rescission of contracts. They cannot be rescinded by either party without replacing the other in as good a condition as he was in before the contract was made. So in these cases, the owner cannot reclaim his goods, when the innocent purchaser of them cannot be left in as good a situation as if he had not bought them.

In the case of a fraudulent conveyance, both parties are *in pari delicto* and the property actually and immediately vests in the purchaser. He has a valid title which he can transmit to others. Its only infirmity is its liability to be impeached by a certain description of persons. As to all others it is perfect. And when it has passed into the hands of innocent holders, even this infirmity is cured, and the title becomes sound and indefeasible.

To return to the positions with which we commenced.

George
*v.*
Kimball.

George
*v.*
Kimball.

We are satisfied that the instructions were correct ; and the jury having found, either that the arrangement was *bonâ fide*, or that the plaintiff purchased without notice of any fraud, he must have judgment.

We are also of opinion, that Wilson was rightfully rejected He caused the goods to be attached and this action brought. He is now responsible to the officer for the result of this suit and incurs the expense of carrying it on. He is in fact the real though not the nominal party. And although he acts as trustee, yet his interest is such as to disqualify him.

*Judgment on the verdict.*