SARAH FLYNT, Administratrix *vs.* DANIEL H. ARNOLD
& another.

A. made a deed of land to B. and B. at the same time gave back a mortgage to A.
Before the deed or mortgage was recorded, B. conveyed the land to C. who had
knowledge of the mortgage.   After the deed to B. and his mortgage to A. were re-
corded, C. mortgaged the land to D. and D. assigned the mortgage to F. : Neither
D. nor E. had any notice of the mortgage to A. besides that which was implied
from its being on record.   *Held,* that E. could not hold the land against A.

WRIT of entry to recover a tract of land in Monson.   The
case was submitted to the court on the following statement of
facts ·

Rufus Flynt, the demandant's intestate, was owner. of the demanded premises on the 4th of January 1835, and on that day conveyed the same, by deed of warranty, to Harry Norris, who at the same time executed a mortgage thereof to said Rufus, to secure the purchase money. The said deed and mortgage were deposited in the hands of one Bridgman, but were not registered. Said Norris went into possession of said premises, and has occupied them ever since. On the 11th of April 1837, he conveyed the same by deed of warranty, acknowledged and registered on the same day, to Luman and Thomas Norris, who had knowledge of the mortgage to Flynt at the time when it was executed, and were sureties of said Harry on his notes given to Flynt for the purchase money. At the time of this conveyance by Harry Norris, Flynt was dead, and the purpose of the conveyance (which was without consideration) was, to compel Bridgman to register the mortgage to Flynt, and give up the deed from Flynt to H. Norris, that it might also be registered.

On the 1st of May 1837, said mortgage was registered, and said deed to Flynt was given up, and was registered on the 6th of the same May. On the 1st of July 1837, Luman and Thomas Norris executed a mortgage of the demanded premises to John Hanna, for a valuable consideration, and this mortgage was registered, and was afterwards assigned to the tenants. Neither Hanna nor the tenants had any notice of the mortgage to Flynt, besides that which is implied by the registry.

Judgment to be rendered for the demandant, or for the tenants, according to the law on the foregoing facts.

This case was argued at the last September term.

*R. A. Chapman*, for the demandant, cited *Adams v. Cuddy*, 13 Pick. 460. *Jackson v. Post*, 15 Wend. 588. Rev. Sts c. 59, §§ 28, 32.

*Wells & Davis*, for the tenants, cited *Connecticut v. Bradish*, 14 Mass. 302. *Trull v. Bigelow*, 16 Mass. 419. *Webster v. Maddox*, 6 Greenl. 256. *Hewes v. Wiswell*, 8 Greenl. 94. *Tuttle v. Jackson*, 6 Wend. 213.

SHAW, C. J. This was an action to foreclose a mortgage, made to Rufus Flynt, the demandant's intestate, by Harry Nor-

Flynt, Administratrix *v.* Arnold & another.

ris. It appears by the agreed statement of facts, that said Rufus Flynt, under whom both parties claim, conveyed the demanded premises, in 1835, to Harry Norris, who immediately mortgaged the same back to Flynt, to secure the payment of the purchase money ; both deeds being delivered at the same time. For some reason, not explained, these deeds were both deposited with a third person, and were not recorded till 1837. The mortgage was recorded on the 1st, and the deed on the 6th of May of that year.

It further appears, that in April 1837, the said Harry Norris conveyed the premises to his brothers, Luman and Thomas Norris, who had full knowledge of his prior mortgage to Flynt. It further appears, that in July 1837, which was after the demandant's mortgage was recorded, Luman and Thomas Norris mortgaged the estate to John Hanna, for a valuable consideration, and he assigned the same to the tenants ; neither Hanna nor the tenants, having any knowledge of the mortgage of Harry Norris to Flynt, other than that arising from the registration.

The tenants contend, that although Luman and Thomas Norris could not hold the estate against Harry Norris's prior mortgage to Rufus Flynt, because they had full knowledge, yet that Hanna had no such knowledge, and therefore he took a good title, which he could and did convey to the tenants. But it was answered and insisted on, in behalf of the demandant, that if the demandant claimed under a prior unregistered deed, the tenants claimed under a subsequent unregistered deed, from the same grantor, and that it was sufficient that the demandant's deed was recorded before that under which the tenants claim ; and also, that as the mortgage deed from Harry Norris to Flynt was on record when Hanna took his deed from Luman and Thomas Norris, in July, it was constructive notice to him, and those who claimed under him, of the demandant's prior title.

Were it not for the cases hereafter mentioned, we should have been strongly inclined to the opinion, that it would be a good answer to this defence, that before Hanna took his deed of Luman and Thomas Norris, in July, the mortgage from Harry Norris to Flynt was on record, and he might by ordinary inquiry have

discovered it ; and that this would constitute constructive notice to him of the existence of that incumbrance. It had then become a deed " acknowledged and recorded," within the letter and spirit of the Rev. Sts. *c.* 59, §§ 1, 28. This provision of the revised statutes is substantially similar to *St.* 1783, *c.* 37, § 4, and that to the provincial statute, 9 Wm. III. *c.* 7, of which an excellent exposition is given, in the valuable reading of judge Trowbridge, 3 Mass. 573.

It had long been held, before the revised statutes, that by the execution and delivery of a deed, the estate, as between grantor and grantee, passed ; and that such a deed, without registration, made a good title, as against the grantor and his heirs, but not against purchasers. *Farnsworth* v. *Childs*, 4 Mass. 637. *Marshall* v. *Fisk*, 6 Mass. 24. It was also held, that such a deed was good as against a purchaser having notice of the prior unregistered deed. *McMechan* v. *Griffing*, 3 Pick. 149. And in this respect, an attaching creditor was placed upon the same footing as a purchaser, and could not hold the estate of his debtor, if at the time of his attachment he had notice of a prior unregistered deed. *Priest* v. *Rice*, 1 Pick. 164. *Tolman* v. *Parsons*, Plymouth County, May 1823.

The Rev. Sts. *c.* 59, so far altered these provisions, as to make a deed, not recorded, good against the " devisees " of the grantor, as well as against himself and his heirs, and also established, by express enactment, what had been before settled by judicial construction, that such a deed should be good against any person having actual notice thereof.

It would seem to follow from these principles, that a deed given for a valuable consideration, duly executed and delivered, would be good against the grantor, and his heirs and devisees, and persons having actual notice of it, from its delivery ; and that it would be good against all persons, purchasers, attaching creditors and other strangers, from the time of its actual registration ; and therefore, if put on record at any time before an indefeasible title is acquired by some person taking a subsequent deed from the same grantee without notice, it must prevail over such after executed deed. Suppose, for instance, A. conveys to B.

who does not immediately record his deed.   A. then conveys to C. who has notice of the prior unregistered deed to B.   C.'s deed, though first recorded, will be postponed to the prior deed to B.   Then suppose B. puts his deed on record, and afterwards C. conveys to D.   If the above views are correct, D. could not hold against B. ; not in right of C. because, in consequence of actual knowledge of the prior deed, C. had but a voidable title ; and not in his own right, because before he took his deed, B.'s deed was on record, and was constructive notice to him of the prior conveyance to B. from A. under whom his title is derived.   *Adams* v. *Cuddy*, 13 Pick. 460.   *Bates* v. *Norcross*, 14 Pick. 224.   But in such case, if before B. recorded his deed, C. had conveyed to D. without actual notice, then D., having neither actual nor constructive notice of the prior deed, would take a good title.   And, as D. in such case would have an indefeasible title himself against B.'s prior deed, so, as an incident to the right of property, he could convey a good and indefeasible title to any other person, although such grantee should have full notice of the prior conveyance from A. to B. Such purchaser, and all claiming under him, would rest on D.'s indefeasible title, unaffected by an early defect of title, by want of registration, which had ceased to have any effect on the title, by a conveyance to D. without notice, by one having a good apparent record title.

The practical consequences resulting from this view of the registry acts would seem to be these :   If a prior conveyance is recorded at any time, however late, before a subsequent conveyance is made by the same grantor to a second grantee, the registration of the deed is conclusive legal notice, to the second grantee, of such prior conveyance :   So if the first conveyance is not put on record before the second is executed, still if the second grantee have actual notice of the prior deed, he takes subject to it :   So if the second deed is put on record before the first, if a *bonâ fide* purchaser, without actual notice of the first conveyance, and before the same is put on record, take a conveyance of the second grantee, he takes a good and indefeasible estate, as against the first grantee ; because he takes an ap-

parent valid title, without actual or constructive notice of any prior conveyance :   So, any other person taking under such indefeasible conveyance derived from a purchaser of the second grantee, without notice, would have a valid title.   But if, before such valid title is acquired by any one under such second grantee, the first deed is recorded — as registration is regarded as constructive notice of a conveyance to any one claiming under the same grantor — such registration would be constructive notice of the existence of such prior conveyance.

But we are aware that these views may seem to come in conflict with the cases of *Connecticut* v. *Bradish*, 14 Mass. 296, and *Trull* v. *Bigelow*, 16 Mass. 406.

In the first of these cases, the point decided, as stated in the marginal note, is as follows :   "One who takès a conveyance of land, knowing that the grantor had previously conveyed to another, cannot hold against the first purchaser, although the first conveyance be not recorded.   But if the second purchaser procures his deed to be recorded before the other, and then sells the land *bonâ fide* to a person wholly ignorant of those circumstances, the latter will hold the land against the first purchaser." This proposition is perfectly consistent with all the views hereinbefore stated, and results from them.   But in point of fact, in that case, the first grantee had put his deed on record, before the sale made by the second grantee to a purchaser.   The court considered that such recording of the deed might be evidence of actual notice to such purchaser thus taking his deed from the second grantee, but that it did not constitute that constructive notice, which would be conclusive, in favor of the first grantee. This is founded wholly on the suggestion, for which no reason is assigned, that when a purchaser is examining a title in the registry of deeds, and finds a good conveyance to his grantor, he is not expected to look further.   We suppose this general proposition was intended so to be limited as to state, that he is not expected to look further for any alienation or incumbrance made by any one holding the title prior to the conveyance to his grantor.   If this proposition is not strictly correct, then the inference drawn from it is not sound.   If the object of any one in

searching the record, to ascertain the goodness of a title, is to inquire and ascertain whether any one, through whom the title is derived, whilst he had the title, and had the power to aliene or incumber it, did so ; then, by following the conveyances down, from each former holder of the estate, to the time of the search, he could find the alienation or incumbrance, if one had been made and recorded. The object of the registry is to give notoriety to all conveyances, and make them certainly known to any one inquiring. If an ordinary diligent search would bring the inquirer to a knowledge of a prior incumbrance or alienation, then he is presumed to know it. It is this presumption, and not the fact of actual knowledge of a prior incumbrance, which binds all subsequent purchasers, and makes the registry conclusive evidence of notice. It serves all the purposes of actual knowledge, by enabling an inquirer, with ordinary diligence, to ascertain the fact. It would seem that a search, so far as to as certain whether any former proprietor, whilst he had the estate, had aliened or incumbered it, would be necessary, in order to render the public registry available to the full extent to which it was designed by law ; and therefore it would be reasonable to presume in each case, that such search had been made, and if any such deed from a proprietor was on record, that it had been discovered and was known to the subsequent purchaser.

The decision in the case of *Trull* v. *Bigelow,* 16 Mass. 406, turned mainly on the point, that although a second purchaser from the same grantor, with notice of a prior unregistered deed, could not hold, yet if he conveyed the estate to a purchaser without notice, the latter might hold it himself, or convey to any other person a good and indefeasible title against the first unregistered grant. The other point, namely, whether registration of the first deed, after the second, but before the conveyance to a subsequent purchaser without actual notice of the first deed, was constructive notice to such subsequent purchaser, though relied upon in the argument, was not particularly noticed in the decision. The authority of this case, so far as it establishes the right of a subsequent purchaser without notice, is recognized in the

case of *Glidden* v. *Hunt*, 24 Pick. 221 ; but this last case is silent as to the other point.

With these general views, and without a particular examination of the cases cited, we were induced, on the first consideration of this case, to decide it in favor of the demandant, upon the short and plain principle, that Hanna and those claiming under him could not hold against the demandant's title, on the ground merely, that she claimed under an unregistered deed ; because, before he purchased of Luman and Thomas Norris, the prior deed of Harry Norris to Flynt was registered ; nor could they hold on the ground of a good and indefeasible title in their grantors, Luman and Thomas Norris ; because, at the time of the conveyance of Harry Norris to them, they had actual notice of his prior unregistered deed to Flynt, from whom the title was derived. But believing that this case may be decided in favor of the demandant upon another and distinct ground, not impugning the authority of the cases cited, we have preferred that course ; the more so, as we are of opinion, that should the point, for which the above cases are cited as authority, be presented for direct adjudication, it is one of great importance, deeply affecting the law touching titles to real estate, deserving therefore of great consideration ; and that such a rule of construction ought not to be drawn in question, without the fullest consideration of all the arguments bearing on the question.

The ground on which we place the present case is this : Rufus Flynt, the demandant's intestate, was the acknowledged owner of the estate. The tenants, as well as the demandant, profess to derive title from him. Taking the facts agreed, Flynt conveyed to Harry Norris, in fee, and Norris by a simultaneous mortgage reconveyed to Flynt in fee. This constituted only an instantaneous seizin in Harry Norris. *Chickering* v. *Lovejoy*, 13 Mass. 51. *Holbrook* v. *Finney*, 4 Mass. 566. Both these deeds remained sometime unregistered ; but both were good as between the parties. In this state of things, Flynt died seized. The tenants then, in order to establish their defence, must rely on the deed from Flynt to Harry Norris ; otherwise they only go back to Harry Norris, showing no title at all from Flynt to

him. But the moment they go to that deed, they find it recorded on the 6th of May 1837 ; and by looking back five days, they find the mortgage executed simultaneously with the deed. If the demandant claims under a deed unregistered, so do the tenants, with this decisive difference, that the deed, under which they claim, was not registered till after that of the demandant. The demandant, therefore, not only claims under a deed prior in time, but under a deed first registered. Besides ; the rule which holds that a prior unregistered deed shall be set aside, in favor of a second deed first recorded, under which a purchaser obtains title without notice of the prior deed, supposes that the grantor, who makes such second deed, has a good apparent title ; that is, that the deed to him is on record, and the deed, by which his title has been aliened or incumbered, is not on record, and so he is enabled to hold out an apparently good title, by which a purchaser might be deceived. But if a person takes a deed from one whose deed is not recorded, he takes at his peril ; and if the deed, by which the title is aliened or incumbered, is on record as early as the deed by which the title is derived, a purchaser cannot be deceived ; because the same record, which shows a conveyance to the grantee, shows at the same time that he has incumbered it. Here precautions were taken on the part of Flynt, that the deed by which he conveyed the estate to Harry Norris, should not be put on record, to give him an apparent title earlier than the mortgage deed, by which it was reconveyed to him as security. And in point of fact, that deed was not on record, until the mortgage was also on record. There was no time in which the record could show the title, without also showing the incumbrance. Without, therefore, deciding the more general question, the court are of opinion, that upon the facts of the present case, the demandant is entitled to recover on her mortgage.

*Judgment for the demandant.*