# Leffler *v.* Lehman, Durr & Co.

### *Action in Detinue (?)*

1. *Admissible testimony; what not error.*—There is no error in overruling objections to testimony which is proper to a right understanding of the case by the jury.

2. *Communications by third party to defendant; admissibility of.*—Communications of a third party to defendants—where such third party undertakes to relate conversations between himself and plaintiff or himself and others—made in the absence of plaintiff, are not admissible against him; but where they merely qualify or explain a bailment between such third party and defendants of the property in controversy, by disclosing some of the *res gestæ,* they are admissible.

3. *Proof of insolvency of claimant; when admissible.*—If there was a clear and undisputed title to the plaintiff in this case, his right to recover would not be affected by the fact of his insolvency, and hence evidence thereof would be inadmissible; but otherwise, where the fact of insolvency might afford some light to the jury in determining the conditions of a sale of the property in question to the plaintiff.

4. *Letters as evidence; admissibility of.*—Where the circumstances show that S. was authorized by a third party to reply to letters of plaintiff; that the letters have the name of S. to them; that they came to plaintiff by due course of mail, in reply to plaintiff's letters, and that one of the letters contained the order for delivery of the property to plaintiff, on which the defendant had written "O. K.—Durr," and which had been already in evidence—such letters would be relevant and admissible.

APPEAL from the City Court of Montgomery.

The record of this case never having come to hands of Reporter—the same being, perhaps, lost—the case is unavoidably reported without the names of judge or counsel, and without a statement of the facts.

[Leffler v. Lehman, Durr & Co.]

MANNING, J.—1. There was no error in overruling the objections to portions of the third and fourth answers in the deposition of O. L. Sanborn. This testimony related to the character of Lehman, Durr & Co.'s possession of the gin in controversy—the conditions and instructions upon which it was delivered to and received or held by them; which were proper to a right understanding of the case by the jury.

2. If by the communications of Sanborn to defendants below, referred to in the testimony, he had undertaken to detail matters or conversations between himself and plaintiff below, or himself and other persons—being made in the absence and without the knowledge of plaintiff—they would not, of course, be admissible against him. But they merely qualify, or explain the bailment between Sanborn and defendants, of the gin, by disclosing some of the *res gestæ* of that transaction, and may tend to explain the meaning of a delivery order written in terms which are somewhat obscure.

3. Whether there was error or not in admitting testimony of the insolvency of plaintiff below, depends on the nature of the inquiries which the jury had to make. If there was a clear, undisputed title to the gin in plaintiff below, of course, his right to recover it would not be affected by the fact of his insolvency. But the order of Sanborn, the son, to Lehman, Durr & Co. to deliver the gin to plaintiff below, did not explain why, or as whose property it was to be delivered, or what contract, if any, had been made in regard to it. Consistently with the terms of the order, it might be made to appear, that the title to and ownership of the gin was not to be vested in plaintiff until he should have paid for it. The transaction might have been a sale for cash, or a sale upon condition that vendor should continue owner till the price was paid; in which event, no time being specified, the law would require the payment to be made in a reasonable time. Thereupon the inquiry might arise, whether, if plaintiff did not pay for the gin, or take it from Lehman, Durr & Co., during all of the crop season, or that portion of the year when the ginning of cotton is performed, he had not concluded to abandon the contract of purchase; and the fact of his insolvency might have afforded to the jury some light in determining this question. Of course, if plaintiff had no title to the gin, he was not entitled to recover.

4. The court erred in refusing to permit the letters offered by plaintiff to go to the jury as evidence to be considered by them. The Sanborns lived in a distant State. It is shown

by the deposition of Sanborn, the father, that his son, James, was authorized to reply for him to the letters of plaintiff; that the letters rejected have the son's name signed to them; that they came to plaintiff by due course of mail in reply to plaintiff's letters, and are the only letters he received in reply thereto; and that one of the letters contained the order for the delivery of the gin, on which letter defendant had written "O. K.—Durr," and which had been already received in evidence.

Under these circumstances, the letters, being relevant to the matter in controversy, should have been submitted to the jury in order that they might determine, in connection with the evidence before them, whether or not they were the genuine letters of Mr. Sanborn, and if so, give to them due consideration, in their conference, in respect to the verdict to be rendered.—*Connecticut v. Bradish*, 14 Mass. 296; *Starr v.* ⁸ *Torrey*, 2 Zabriskie, 190; *Curry v. Robinson*, 11 Ala. 266.

For the error indicated, the judgment is reversed and the cause remanded.