Argued May 18; affirmed June 15, 1937

# STATE ex rel. KUNZ v. WOODMANSEE

(69 P. (2d) 298)

*James J. Crossley*, of Portland, for appellant.

*Olive Zimmerman* and *Thomas B. Handley*, Deputy District Attorneys, both of Portland (James R. Bain, District Attorney, of Portland, on the brief), for respondent.

KELLY, J. In 1926, the relatrix Anna H. Kunz, an unmarried woman of the age of 37 years, came to this country from Germany. In 1922, she graduated as a trained nurse in Germany. She took a post graduate course in surgery in Detroit and she also took a post

graduate course in anaesthesia in Cleveland. She worked for a time in Pennsylvania as an anaesthetist. For two years she worked as a nurse in a hospital at Portland, Oregon.

The defendant is a dentist specializing in extractions and having his office in Salem, Oregon. On November 5, 1931, the relatrix was employed by the defendant as an assistant in his office.

The relatrix testified that in January, 1932, the defendant had sexual intercourse with her and that thereafter she and the defendant continued to have sexual intercourse with each other on an average of once a week until she became pregnant, August 23, 1933.

The relatrix also testified that since coming to this country in 1926, she had not had sexual relations with any one other than the defendant.

On April 1, 1934, at San Diego, California, the relatrix was delivered of twin children.

On July 11, 1935, a complaint was filed. On July 20, 1935, a preliminary hearing was held in the district court of Multnomah county, and the matter was certified to the circuit court for trial. On October 23 and 24, 1935, the case was tried in the circuit court, without a jury, and defendant was found to be the father of the twin children born to the relatrix.

On the 16th day of November, 1935, the trial court entered an order and judgment conformable to said finding. On the 26th of November, 1935, defendant filed a motion asking that said judgment and order be set aside and that a new trial be granted. On December 24, 1935, said motion for a new trial was overruled.

Defendant assigns error, (1) in the admission of certain letters; (2) in that [as defendant claims] the

relatrix's testimony was not corroborated; (3) for the reason that two witnesses testified that they had sexual intercourse with relatrix at the time she claims to have conceived; (4) because [as defendant claims] the testimony did not preponderate in favor of plaintiff, but, on the contrary, the preponderance thereof was in favor of defendant; and (5) in the action of the trial court in denying defendant's motion to set aside the judgment and grant a new trial.

The letters which were received in evidence over defendant's objection are known to the record as state's exhibit 3 and state's exhibits 6 to 13 inclusive. State's exhibit 3 was received as part of the state's case in chief. Exhibits 6 to 13 aforesaid were introduced as part of defendant's cross-examination.

Exhibit 3 is as follows:

"Salem, Ore.
March 22, 34.

Darling Mommy:—

I am almost too tired to write, but will any how as I know a little girl that is lonesome, and not feeling any too good. Had planned on playing Golf today, but some folks came in from away out in the country with 4 impactions so I took 2 of them out, and then Dr. Ellis came in with an impacted cuspid that he had tried to get and failed, and no wonder as it was one of the worst I have ever seen and I worked thru the noon hour on that so didnt go to lunch at all, and am beginning to to get hungry. If mommy was here we would surely be having some crackers and tea by this time. Have to take wood on the first job.

Our famous orchestra played Mon. Tues, and Wed. nights and some one wanted us to play again Fri. but I have had plenty for this week. I was going to tell you oh so many things and blamed if I can think of some of them. Played golf in Portland last Sun. and I got beat but our team won. The weather has been just ab-

solutely perfect, and I keep thinking how it is in San Diego. Cant be any better there but I suppose just as good.

Business has been fairly good this month but collections are terrible. I suppose it must be on acct. of tax paying time and everybody has used their money for that. I havnt fixed up our state tax yet but will do that the first of next week. Took care of the Federal along with mine and will do the State the same.

Am being a good boy mommy dear and you dont ever need to worry about daddy ever getting himself into this kind of a worry again. You can bet all you have on that. Often wish that we could of had a little more sense, but things always come out all right in the end, so guess they will for us too. Sure miss you around here sweetheart and think of you day and night so just be as brave as you can. With lots of love and a bushel of xxxxxxxxxxxxxxxxxxxx xxxxxxxxxxxxxxxxxxxxxx xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx.

Dady.''

The reference therein to Dr. Ellis coming in with an impacted cuspid that he had tried to get and failed, likewise, the statement that ''our famous orchestra played Mon. Tues. and Wed. nights'' and also the assertion that the writer of the letter ''played golf in Portland last Sun. and I got beat, but our team won'' could all have been easily refuted if untrue. Two members of the orchestra were witnesses in behalf of defendant. Dr. Ellis' records unquestionably would have determined whether at that time he brought the defendant a very bad case of impacted cuspid. No request was made for an opportunity to do this. It is inconceivable that the relatrix would venture to write, or have written for her, a letter with such statements.

Exhibit No. 2 is a letter admittedly written by defendant. It is in defendant's handwriting—not typewrit-

ten. It is signed "Dady". It will be noted that exhibit No. 3 is likewise signed "Dady". Exhibit No. 6 contains this statement,—"For one thing business is rotten, about the worst I have ever seen, have only done $42.00 all week." It also states,—"There arent any changes here in the building that I can think of. Dr. Scotts room is still vacant." The defendant testified in effect that it was with difficulty he operated a typewriter. This exhibit [No. 6] refers to the time it required the writer of it to write the first twenty-two lines and the first two words of the twenty-third line. "I have just been an hour writing this much but know that if I tried to write with a pen and ink you couldnt read it altho it would make several pages. I know it could be a better letter tho as I have to stop and think with this darn thing."

The statement as to defendant's weekly receipts could have been shown to be incorrect by the defendant's records. The statement as to the continuing vacancy of the office formerly occupied by Dr. Scott could have been corrected by the records of the landlord; and the defendant's own testimony confirms the accuracy of the statement concerning his slow typewriting.

Exhibit No. 7 states that,—

"Things have been just terrible here a few days before the 1st. of May business quit all over town and it has been that way ever since. Just about like it was the 1st week you were here and never has picked up. This month has been a speck better but is still rotten as can be and will hustle me to make expenses. even the P & S acct. only run $6.00." Also, "Pulled a lower left 1st. Molar for Mable Savage around the 1st of the month and it was a bad one." [The exhibit is dated 6-9-34.] "Her jaw was real sore for several days and I had to pack it for her."

The statement is also made that, "Miss Larson helped me here at the office today as Erna wanted to stay home. She isnt working at the General any more since the new management." In this exhibit, there is a reference to a prominent dentist in Salem to the effect that he "pushed a root into the antrum yesterday and told the patient that it was all out and left the hole open so I had to come down after supper and clean up the mess. Dr. Waters brought him over." These matters, if not true, were all susceptible of denial by disinterested witnesses. No such denial was offered.

Exhibit No. 8 comments upon the failure of its author to get a letter from relatrix. The similarity of the typing to that appearing in exhibit 4, which was admittedly written by defendant, and the fact that it is one of a series of letters, all of which bear upon the same subject, are very obvious.

Exhibit No. 9 states that its author hurt his thumb "last Thursday playing golf and made it worse by playing again Sat. so didn't play Sun. but went fishing instead up the river and never even got a bite. Went with Dr. Steeves up the Santiam about 65 miles and was sure tired when night came". Dr. Steeves was one of defendant's witnesses, who testified after the introduction of this exhibit. His attention was not called to this statement about him.

Exhibit No. 10, among other things, states: "Was coming back to the office tonight and write you a real long letter, but little Doc Scott moved away to Klamath Falls this Morn. and we have to break in a new guitar player tonight as we have a pay job in McMinnville Thurs. night, and another in Eugene next week." If this letter were spurious, in all probability that statement would be false. No denial of its truth was offered.

Exhibit No. 11 opens with the following: "I received your letter telling me the bad news yesterday also one from Dr. Hall in a little more detail at the same time." Any serious challenge of the authorityship of this letter would naturally be supported by Dr. Hall's testimony.

Exhibit No. 12, among other things, says: "Mrs. W. got the special Delivery you sent." * * * "You know she helps here Thurs. and anything mailed on Mon. by you might not be recd. by me. Dr. D. brought me the one you sent him also the one Dr. H sent him." Evidently "Mrs. W" refers to defendant's wife and the abbreviations "Dr D" and "Dr H" refer to Dr. Downs and Dr. Hall.

Exhibit No. 13 is typewritten upon stationery bearing the printed letterhead of the defendant. To it is attached an envelope upon which is printed the defendant's name, profession and office address. This envelope bears the Salem postoffice stamp of the same date as the letter.

The defendant cites the case of *Beverly v. Burke*, 9 Ga. 440 (54 Am. Dec. 351), in support of his contention that error was committed by receiving these letters in evidence. We quote from the opinion:

"The defendant's counsel offered in evidence a copy of a deed from Henry Reeves to Edmund Baughan, to the lot of land in controversy, which had been duly established in Fayette superior court, in lieu of the lost original, and recorded in Fayette superior court. This copy deed was rejected on the ground that the original deed not having been recorded in Fayette, it was necessary that the execution should be proven by the subscribing witnesses. There can be no doubt that when a copy deed is established, that it is to be treated as the original, for all purposes whatsoever.

But here the original deed was never recorded in Fayette county. If produced, it could not be read in evidence, without proof of its execution. The copy, therefore, could be entitled to no greater privilege.

The fact that it was recorded in the minutes of Fayette superior court, in the course of the proceeding which was instituted for its establishment, did not dispense with the statutory requirement of being registered by the clerk of the superior court of Fayette county, in the book kept by him for the registration of deeds.''

Except as to parties or privies to the proceeding wherein the copy was established as a true copy of the original, the holding of the Georgia court conforms to our practice; but the question here has nothing to do with copies nor with instruments purporting to be executed in the presence of subscribing witnesses.

 In the instant case, the question is whether there was sufficient authentication of the purported original letters to justify their admission in evidence.

These letters are not in the handwriting of the alleged sender.

''A letter not in the handwriting of the alleged sender may be looked into for internal evidence of the source from which it came, as for instance the fact that it relates to matters which are known only to the alleged sender.'' 22 C. J. Subject: Evidence, p. 907, § 1109, note 80 and authorities there cited.

*In re Deep River Nat. Bank,* 73 Conn. 341 (47 Atl. 675), is a case where this principle was applied. There the letters were typewritten and signed by means of a rubber stamp. When they were first offered, the trial court sustained defendant's objections thereto.

''Thereupon, the appellant offered evidence to prove, and from such evidence and the letters themselves the court found, that said letters were dictated

by said Clinton B. Davis to a stenographer employed by said Cutaway Harrow Company, who afterwards, by direction of said Davis, transcribed them upon a typewriter and by said Davis' direction affixed the signature appearing thereto by means of a rubber stamp, which was provided with the purpose of having it used by the typewriter in that manner, and save said Davis the trouble of signing the correspondence personally. * * * The respondent moved for a correction of the finding by striking out the statement that these letters were dictated by said Davis to the stenographer, and the signature affixed thereto by the stenographer, at the direction of said Davis, by means of a rubber stamp provided by Davis for that purpose, * * * upon the ground that there was no evidence to support such finding.''

Speaking through Hall, J., the Connecticut Supreme Court of Errors, say:

''Although these letters were written under letter heads of the Cutaway Harrow Company, and concerning its business, and were signed, 'Clinton B. Davis, Treasurer,' they were nevertheless personal letters of Davis, if proved to have been written and signed by his direction, in so far as they spoke in his name regarding his personal affairs. There was evidence to show that Davis, who was the treasurer of the Cutaway Harrow Company, and its financial manager, did the principal business with the banks, and dictated to a stenographer letters written to the banks; that the stenographer having transcribed such dictated letters upon a typewriter, was authorized by Davis to affix to them the latter's signature with the rubber stamp, which Davis had procured, and which he used in the office in signing both business and personal letters, and with which the letters in question were signed. *The contents of the letters themselves indicated that they were dictated or written by one familiar with the business of the company and with Mr. Davis' affairs.* In the absence of any evidence to the contrary, the proof thus presented was sufficient to sustain the finding that the

letters were dictated by the deceased to the stenographer, and that he transcribed them and affixed the signature by direction of Davis. After such proof, the letters were properly received in evidence." *In re Deep River Nat. Bank, supra.* (Italics supplied.)

Defendant urges that this case is not in point because there was "no evidence to the contrary" in that case, while in the case at bar defendant denied the authenticity of the letters in suit. We quote from it because it supports the practice of considering for the purpose of determining its source the internal evidence contained within a typewritten letter not manually signed by its author.

This practice was approved in *Commonwealth v. Drum*, 42 Pa. Superior 156. That was a criminal case, the charge being that of conspiracy. It cannot be said that in that case the plea of not guilty failed to put in issue every material element of the crime charged.

The same doctrine is announced in *Fayette Liquor Co. v. Jones*, 75 W. Va. 119 (83 S. E. 726). In that case we find this expression:

"It would be practically impossible for one to forge a continuous course of letters like those and make all of them so intelligibly to fit, as these letters do, the situation and circumstances existing when they were written. The contents of the letters in every instance appear to be just such as Claytor would in all probability write under the circumstances proved as existing at that time of the writing. It appears in testimony that Claytor himself could scarcely write. Do not the contents of the letters, considered in connection with the proved circumstances, and the fact that the letters purport to come from an illiterate, go so far toward proving their authenticity as to make them admissible before the jury? We are of opinion that, under the circumstances of the case with which they are connected, they were admissible as tending to prove their own authenticity."

In *Davis v. Robinson*, 67 Iowa 355 (25 N. W. 280), it was held that letters written on a typewriter received by a party and purporting to be in answer to letters written by him are admissible in evidence. The same rule, although not as applied to typewritten letters, is approved in Greenleaf on Evidence.

"§ 573a. A further exception to the rule requiring proof of handwriting, has been admitted in the case of letters received in reply to others proved to have been sent to the party. Thus where the plaintiff's attorney wrote a letter addressed to the defendant at his residence, and sent it by the post, to which he received a reply purporting to be from the defendant; it was held, that the letter thus received was admissible in evidence, without proof of the defendant's handwriting, and that letters of an earlier date in the same handwriting, might also be read, without other proof." 1 Greenleaf on Evidence (Redfield's Ed.) pp. 618, 619.

The same principle is announced in *Illinois Central Railroad Co. v. Messnard,* 15 Brad. (Ill. App.) 213. There the syllabus recites that the appellee claimed that writing was forged. See also *Metropolitan Life Ins. Co. v. Armstrong*, 85 Fed. (2d) 187.

The question of the sufficiency of the authenticity of letters offered in evidence is addressed to the discretion of the trial court: *O. N. Bull Remedy Co. v. Boyer*, 109 Min. 396 (124 N. W. 20, 32 L. R. A. (N. S.) 519, 18 Ann. Cas. 413).

"On the whole it would seem safe to authorize the trial Court, in discretion, to allow to go to the jury a typewritten communication bearing sufficient indication of authenticity in its contents and letter-head." Excerpt from note 1, p. 2918, § 2149, Vol. III, Wigmore on Evidence.

We think that the learned trial judge committed no error in receiving in evidence the letters above mentioned.

■ These letters corroborate the relatrix. The checks, photostatic copies of which are in the record, covering remittances to the relatrix by defendant after he was apprised of her delicate condition; defendant's letter to Dr. Hall, the accouching physician, guaranteeing payment of the doctor's fee and that of the hospital; testimony that defendant and relatrix left the home of relatrix and were gone all night; that defendant was in the apartment of relatrix on one occasion partially disrobed and that both relatrix and defendant were visibly embarrassed by the advent of the witness who related the incident; the admitted interest taken by defendant in the welfare of relatrix; the fact that he sent her approximately $500 to meet the demands upon her caused by her pregnancy and childbirth; and the endearing terms employed in letters admittedly genuine, are circumstances corroborative in their nature. It is true that the defendant explains them in a way consistent with his innocence; but his explanation was not convincing to the trial court nor does it convince us.

■ Two men testified that at or about the time relatrix claims to have conceived, they had sexual intercourse with her. These men were members of defendant's orchestra. Relatrix contradicts them and it became the duty of the trial judge to determine whether he would believe them or the relatrix. The learned and experienced trial judge had the advantage of observing the manner of the witnesses while testifying. His finding in this regard is very persuasive. We are unwilling to treat this record as a basis for overruling it.

■ As we read the record, the clear and convincing preponderance of the testimony is upon the side of the plaintiff. No good purpose would be served by reviewing the salacious portions of the evidence. Suffice

it to say that in our opinion no injustice has been done to defendant.

 Defendant's motion for a new trial is based upon the alleged errors which we have discussed, and upon the further ground disclosed in four affidavits, namely, those of his wife, his sister, Dr. H. K. Stockwell and himself, and in a verified certificate of Dr. Raymond E. Watkins.

Mrs. Woodmansee's affidavit refers to a letter from relatrix enclosing one purporting to have been written on New Year's Day by defendant. This enclosure, she says, was of teutonic cast and in her opinion was not written by her husband. She destroyed it. She knew nothing of the charges brought against her husband by relatrix, of the testimony supporting them or the trial until it had been concluded. Her affidavit also discloses substantial payments made by defendant upon the mortgage against their home. It also states that no means were ever employed by her husband or herself to prevent conception or childbirth and that both she and her husband desired to have children. The sister of defendant states that after the conclusion of the trial, relatrix called by telephone and gloated over fastening the parentage of her children upon the defendant. Dr. Stockwell swears that a physical examination of defendant's wife demonstrated that she was not sterile or barren, but fully capable of conceiving and having children. The verified certificate of Dr. Watkins is to the same effect. The defendant's affidavit corroborates that of his wife insofar as the facts therein stated are known to him; and refers to a certificate by Dr. A. E. Wrightman to the effect that Dr. Wrightman examined defendant several times during the period of 1926 and 1929 and at no time was he

able to demonstrate the presence of active spermatozoa. The concluding sentence in this certificate is as follows:

"I am certain that during this time he [defendant] was sterile and that it would have been impossible for him to have been the parent of children."

We are unable to say that the trial court abused its discretion in denying defendant's motion for a new trial.

Speaking through Mr. Justice ROSSMAN, this court has said:

"A party cannot withhold part of his evidence, experiment with the balance, and in the event the verdict goes to his opponent obtain a new trial so that he may venture forth with the weapon he neglected upon the first trial. 'No man is entitled to more than one fair trial.'" *Seaton v. Security S. & T. Co.,* 131 Or. 261, 274 (282 P. 556).

We quote from defendant's direct examination in chief:

"Q. Ever had any children? A. No sir.

Q. Why? A. Couldn't.

Q. Is your wife barren?

A. Oh, just a—I would just a little sooner not discuss it.

Q. Are you impotent? A. I rather am afraid so.

Q. Have you ever had an examination? A. Yes.

Q. What did the doctor advise you?

A. He advised me that I couldn't have at that time.

Q. When was that?

A. Oh, that has been periodically up to within the past two years, regularly. I finally gave it up. For the past ten years I think I have checked that up regularly.

Q. Any time in '33 from March to September?

A. Well, I am not sure as to the time; I think there was at least two or three examinations made that year."

It will be seen that the facts stated by defendant's wife and Drs. Stockwell and Watkins as to her physical condition were withheld by defendant.

As to defendant's physical condition, defendant testified on the subject. Dr. Wrightman's opinion is only cumulative.

"Before a new trial will be granted on the ground of newly-discovered evidence, it must appear that such evidence was not known, and could not, with due diligence, have been discovered at the time of the trial, that it is quite material and not merely cumulative or for the sole purpose of impeaching opponent's witnesses. Cutler v. Columbia, 1 Or. 101; Oregon v. Latshaw, 1 Or. 146; Lander v. Miles, 3 Or. 35; State v. Gardner, 33 Or. 149, 54 P. 809; State v. Magers, 36 Or. 38, 58 P. 892; State v. Mims, 36 Or. 315, 61 P. 888. * * * State v. Hill, 39 Or. 90, 65 P. 518." Annotation to section 2-802, Oregon Code, 1930, Vol. 1, p. 392.

Denial of motion for a new trial will be reversed only for manifest error for abuse of discretion: *Ruckman v. Ormond*, 42 Or. 209 (70 P. 707); *Stern v. Volz*, 52 Or. 597 (98 P. 148); *Seaton v. Security S. & T. Co.*, supra, ibid.

As to the character of the letter defendant's wife received from relatrix and as to the telephone conversation to which defendant's sister was subjected, at most, these would be only of an impeaching nature.

The judgment of the circuit court is affirmed.

CAMPBELL and BELT, JJ., not sitting.