CHARLES E. LANCASTER *vs.* MORRILL H. AMES.

Cumberland.    Opinion September 19, 1907.

*Evidence.  "Reply Letters."  Typewritten Signatures.  Presumptions.  Stock
Gambling.  Illegal Consideration.*

1.  When material and otherwise admissible, a letter which is received by
due course of mail, purporting to come in answer from the person to
whom a prior letter has been duly addressed and mailed, is admissible
without specific proof of the genuineness of the signature.  And the rule
is the same, whether the signature be written or typewritten.

2.  The presumption of genuineness arising when a letter, with the signa-
ture either written or typewritten, is received by due course of mail pur-
porting to come in answer from the person to whom a prior letter has
been duly addressed and mailed, may be strengthened by internal evi-
dence in the contents of the letter itself.

3.  The purchase of stocks on margins is a gambling transaction, and is
illegal.

4.  When money is deposited or loaned to another, for the express purpose
of being used in the purchase of stocks on margins, the promise of the
one, with whom it is deposited or to whom it is loaned, to repay or to be
accountable for it, is based upon an illegal consideration, and cannot be
enforced.

5.  In the case at bar, *Held :* That the evidence shows that the plaintiff
deposited his money with the defendant for the express purpose of its
being used in buying stocks on margins.

On exceptions and motion by defendant.    Sustained.

Action of assumpsit brought in the Superior Court, Cumberland
County.    The declaration in the plaintiff's writ, is as follows :

"In a plea of the case, for that the said defendant, at said Port-
land on the thirteenth day of July 1903, agreed with the plaintiff,
that if he, the said plaintiff, would put one hundred dollars (100)
into a certain investment, he Ames, would give or make him a
suit of clothes for his first years profits, or he would guarantee him
the value of said suit of clothes at the end of the first year as a
profit ; that said defendant on said date, promised to account for
or return said one hundred dollars at the end of one year, if so

requested; and the said Lancaster relying upon said representations, promises and guarantee of the defendant, did then and there let the said Ames have said sum to invest; that said Ames though requested has never paid said profit to the plaintiff, nor any part thereof, neither has he accounted to said plaintiff for said one hundred dollars or any part thereof though also requested so to do." Also under the money counts in the writ the plaintiff made the following specification: "The plaintiff will prove the defendant accepted 100 on July 13th 1903 for the use of plaintiff; and that he agreed to repay on (or) account for said sum at the end of one year but has neglected so to do upon request, and that said money was accepted by the defendant to invest."

Tried at the February term, 1907, of the aforesaid Superior Court. Plea, the general issue. Verdict for plaintiff for $116. During the trial the defendant excepted to certain rulings made by the presiding Justice and also after verdict filed a general motion for a new trial.

All the material facts appear in the opinion.

*Clarence E. Sawyer,* for plaintiff.

*Seiders, Marshall & Sturgis,* for defendant.

SITTING: EMERY, C. J., WHITEHOUSE, SAVAGE, PEABODY, CORNISH, KING, JJ.

SAVAGE, J. The plaintiff in his declaration alleged, among other things, that he let the defendant have one hundred dollars to invest, and that the defendant promised to account for or return the same at the end of one year, if so requested. Also, under the money counts in his writ, the plaintiff made the following specification: —
" The plaintiff will prove the defendant accepted 100 on July 13th, 1903, for use of the plaintiff; and that he agreed to repay on (or) account for said sum at the end of one year, but has neglected so to do upon request, and that said money was accepted by the defendant to invest." We can discover no substantial difference between the special count and the specification under the money counts. Although other promises are set out in the special count,

the amount of the verdict for the plaintiff, considered in the light of the evidence, makes it certain that the jury based their verdict upon the allegations which we have already stated. The plaintiff's testimony, or at least some portions of it, tended to support these allegations.

The defendant, on the other hand, denied making the alleged promise, but claimed that the plaintiff let him have the money to be sent to a concern in Boston, known as the Financial Indicator Company, to be used by that company in buying on the plaintiff's account stock in the American Sugar Refining Co. on margins. He also claimed that the sole responsibility assumed by him was the forwarding of the money to the Boston concern and that he forwarded the money as agreed. Either one of the defendant's claims, if sustained by proof, would constitute a defense. The defendant, therefore, as a part of his defense, had a right to show that he forwarded the money to the Financial Indicator Company.

It seems to be undisputed that when the plaintiff paid his money to the defendant, the latter gave him a receipt of the following tenor:

"Portland, July 13, 1903, Received of Charles E. Lancaster one hundred dollars to be invested in the Financial Indicator Co. 31 State St. Boston, Mass. This receipt to be void when he receives receipt from said Co."

The defendant testified, without objection, that he sent a check for the money to the Financial Indicator Co. by mail, the night of the 13th of July, that the check came back to him in the ordinary course of banking as paid, and bearing the endorsement of W. H. Gilman, the treasurer and manager of the Indicator Company; and that on the 15th of July he received the letter which he offered, as a reply to his remittance of the plaintiff's money. This letter bore date "Boston, July 14, 1903." Upon it was printed what appeared to be the letter head of the Financial Indicator Co. at 31 State St. Boston, together with the names of the president, and of W. H. Gilman as treasurer. The whole body of the letter, including the name of the one purporting to be the writer, was typewritten. There was no written signature.

The defendant further testified that he had before that time received letters from Gilman or the Indicator Co., having a letter head like the one in question, that usually they had been signed on the typewriter only, that he had replied to Gilman, taking up matters presented in such letters, and had received replies back from him covering the same subjects.

The letter was addressed to the defendant, and omitting the letter head and immaterial matters, was as follows:

"Dear Sir: Your letter of yesterday's date enclosing checks for $150. received, . . . I have an appointment with some prominent parties at 3.30, and I trust you will excuse the delay about sending receipts until tomorrow.

I shall send one direct to Dr. Charles E. Lancaster, Brunswick, Me. and the other directly to you for Elizabeth, W. V———.

Yours truly,<br>W. H. Gilman."

This letter when offered was excluded by the court, and exceptions were taken by the defendant, the verdict being against him. The correctness of this ruling we have now to consider.

The letter was excluded, not because a genuine acknowledgment of the defendant's remittance to Gilman or the Indicator Company would not have been admissible, as indeed it would be, but solely because, being wholly typewritten, it was not "authenticated in the usual way," and because "the letter itself, in the judgment of the court did not seem to possess sufficient internal evidence of its authenticity to allow it to go to the jury."

It is true as a general rule that documentary evidence, to be admissible, must be authenticated, and in case of a letter this is ordinarily done by proof of the genuineness of the signature of the writer. When the signature is typewritten this method of authentication may be difficult, if not impossible. At any rate it was not tried in this case. But there is a relaxation of this rule in the case of what are called reply letters. The rule does not apply to a letter which is received by due course of mail, purporting to come in answer from the person to whom a prior letter has been duly ad-

dressed and mailed.　Proof of these facts is sufficient evidence of the genuineness of the reply to go to the jury, without specific proof of the genuineness of the signature.　The genuineness is assumed, at least, until the contrary is shown.　*Connecticut* v. *Bradish*, 14 Mass. 296 ; 3 Wigmore on Evidence, sect. 2153.　The rule is recognized in *Abbott* v. *McAloon*, 70 Maine, 98.　This is true when the signature is in the handwriting of some person.　Logically it must be equally true when the signature is typewritten.

We think the letter before us bears internal evidence of being an answer to a prior one written by the defendant to Gilman, the treasurer of the Indicator Company.　The succession of dates, the reference to checks received and to receipts to be sent to the plaintiff and one other person, taken in connection with the testimony respecting the letter written by the defendant to the Indicator Company, leave no real doubt that the letter over the name Gilman was an answer to one written the day before by the defendant in which he says he enclosed the plaintiff's money.　That is certainly the purport of it. Accordingly we think that the letter should have been admitted. The defendant's exceptions must be sustained.

We think that the motion for a new trial should also be sustained.

The plaintiff denies that he knew that the money was to be sent to the Boston concern for investment, or that he understood it was to be used for stock gambling either in Boston, or by the defendant at Portland.　The effect of the receipt taken by him and of some of his admissions render it extremely improbable that his present version relating to the defendant's position in the matter is the true one.　But assuming that it was as he now claims, and that he thought he was dealing with the defendant alone as a principal, we think, after a careful consideration of all the evidence, that the plaintiff, notwithstanding his denials, intended that his money should be used in stock gambling.　To say in the light of the evidence that he did not understand that the money was to be used in buying "sugar" stock on margins is not creditable to the intelligence of an educated professional man such as he is.　We are convinced that he so understood, and that he intended the money to be so used.　If so, the whole transaction was illegal.　*Rumsey* v.

*Berry,* 65 Maine, 570; *O'Brien* v. *Luques,* 81 Maine, 46. The defendant's promise to repay or to be accountable for the money, if he made such a promise, was a part of the illegal transaction, which the court will not enforce. *Tyler* v. *Carlisle,* 79 Maine, 210. We think the verdict was clearly wrong, and that it should be set aside.

*Motion and exceptions sustained.*