# CHARLESTON

FAYETTE LIQUOR CO. v. JONES *et al.*

Submitted September 22, 1914.    Decided October 13, 1914.

1. ATTACHMENT—*Affidavit—Requisites.*

    In an affidavit for an attachment, the material facts relied on to support the grounds of attachment must be of positive import bearing out those grounds, and be of sufficient certainty and particularity to enable the party proceeded against properly to defend. (p. 121).

2. APPEAL AND ERROR—*Presentation for Review—Refusal of Supplemental Affidavit in Attachment.*

    Where the court has refused a request to file a supplemental affidavit in attachment, and the record does not disclose what was proposed as supplemental, it must be presumed that the proposed supplemental matter was subject to valid objection. (p. 122).

3. PLEADING—*Bill of Particulars—Timely Demand.*

    The refusal of a demand for a more definite bill of particulars will not be ground for reversal where the bill of particulars objected to was itemized, and the record of the case as a whole discloses

75 W. Va.

plainly that the defendant was in nowise prejudiced by being sub-
jected to trial on the same.  (p. 123).

4.  EVIDENCE—*Documentary Evidence*—*Proof of Authorship.*

A continuous course of letters not in the handwriting of the
alleged illiterate sender, relating to matters proved as existing be-
tween him and the addressee, and so consistent with truthful
relation thereto as to make it most improbable that anyone could
have forged them, may be allowed to go to the jury for internal
evidence of the source from which they came.  (p. 123).

5.  SAME—*Documents*—*Carbon Copies.*

Carbon copies of the originals of letters written and mailed are
admissible in evidence, where their authenticity is proved and the
addressee has been called on to produce the originals but fails to do
so.  (p. 125).

6.  PARTNERSHIP—*Payment of Firm Debt*—*Note of Partner*—*Burden of
Proof.*

The individual note of a partner, given for an account due from
the firm, does not presumably discharge the debt as to the firm.
The party claiming that the note operates to discharge the firm debt
has the burden of proving that the note was so intended and
accepted.  (p. 125).

7.  ACCOUNT STATED—*Admission of Correctness*—*Failure to Dispute*—
*Proof.*

The failure to dispute an account rendered, after the lapse of a
reasonable time, amounts to an admission of its correctness.  Un-
controverted proof of such an admission is sufficient basis for
recovery on the account without resorting to the original entries or
other proof.  (p. 126).

Error to Circuit Court, Fayette County.

Action by the Fayette Liquor Company against J. M.
Jones and others,  Judgment for defendants, and plaintiff
brings error.

*Reversed and Judgment Entered Here.*

*Osenton & Horan,* for plaintiff in error.

*Dillon & Nuckolls* and *R. T. Hubbard, Jr.,* for defendants
in error.

ROBINSON, JUDGE:

This action in assumpsit is based upon an account for mer-
chandise alleged to have been sold by plaintiff to Claytor

and Jones as partners, under the firm name of J. M. Jones. It was accompanied by an attachment against Claytor. He defended by pleading and undertaking to prove that he was not a partner, and that he had in no way assumed to pay the alleged debt. The suit progressed to a verdict in favor of plaintiff against defendants, Claytor and Jones, as partners. Thereafter the court quashed the attachment, set aside the verdict as to Claytor, entered final judgment in his favor, and on the verdict entered judgment for plaintiff against Jones only. Plaintiff has prosecuted error.

The affidavit for the attachment is defective in its statement of material facts. That statement is as follows: "Affiant further says that it has recently come to his knowledge and he believes his information to be true, that the said L. C. Claytor, one of the defendants herein, and the responsible partner in said business, has proposed to one of his friends to convey to him and without consideration all real estate owned by him, situated in Fayette County, West Virginia, consisting of valuable lands and appurtenances, and that he believes the information which he has to be true." Primarily all this is bad in not even purporting to state material facts positively, but only on information. *Hudkins* v. *Haskins*, 22 W. Va. 645; *Sublett* v. *Wood*, 76 Va. 318; *Clowser* v. *Hall*, 80 Va. 864. Then, the statement does not bear out the grounds of attachment, that Claytor has converted his property, or a material part thereof, into money or securities, with intent to defraud his creditors, and that he has assigned or disposed of his property, or is about to do so, with such intent. It does not show that he has converted any of his property—turned any of it into money or securities. Nor does it show that he has actually assigned or disposed of any of his property. The statement merely says that Claytor proposed to dispose of his property on a single occasion. It does not say that the proposition was accepted by the friend to whom it was made. The facts do not suffice to show that Claytor is about to convert his property or to dispose of it. Will the friend accept the proposition mentioned? Is he so related to Claytor, or of such fraudulent inclination, as to be likely to do so? Does Claytor continue in the intent

manifested by the single offer mentioned? It may be that the friend will not enter into the fraud, or that Claytor has changed his mind and intends to keep the property. Wherein at all does the statement show facts justifying the grounds alleged for the attachment? The mere statement that he has proposed to dispose of his property to a friend can not be taken to say that he is about to dispose of it, when the fact does not appear that the friend has accepted such proposition or is at all likely to do so. Besides, the statement lacks the certainty and particularity required in good pleading. When was the proposition made? Where? Who is the friend to whom it was made? These things, among others, the defendant is entitled to know by the charge, in order that he may properly defend. The statement is entirely deficient because of its want of definite allegation in the several particulars to which we have referred. The harsh remedy of attachment can not be supported by it. "A statement of material facts in an affidavit for attachment must be certain and definite, in a legal point of view, so as to inform those entitled to defend the attachment what particular facts they must repel." *Goodman* v. *Henry*, 42 W. Va. 526. The defective character of the statement warranted the quashing of the attachment.

Plaintiff's request to file a supplemental affidavit was refused. Affidavits for attachment may be supplemented in relation to the statement of the material facts relied on to show the existence of the grounds alleged. Code 1913, ch. 106, sec. 1. But all this is defined and limited by the statute. When a statement of material facts is objected to as insufficient, the affiant has the right within a time prescribed by the court "to file a supplemental affidavit, stating any other facts which may have come to his knowledge since the filing of the original affidavit." By the very language of the statute the new affidavit can only be supplemental, not corrective. It can only contain new facts, discovered subsequent to the filing of the original affidavit. The statute does not authorize the patching up of the original; it only authorizes the supplementing of the same by additional facts, not known when the former affidavit was made. Now, while plaintiff

asked to file a supplemental affidavit, and certainly had the right to file a proper one, the record does not show what was proposed as supplemental. In no way does it affirmatively appear that plaintiff proposed properly to supplement the original. From the court's refusal, we must presume that what plaintiff proposed in this regard was subject to valid objection.

On the trial the evidence adduced by plaintiff tended to establish that Claytor was a partner and that he was liable for the demand, jointly and severally with Jones, the other partner. No evidence was offered on behalf of defendants. The facts, circumstances, and admissions proved were sufficient to support the finding of the jury. The verdict was not contrary to the evidence. Then, what error, if any, committed to the prejudice of Claytor, warranted the court in setting aside the verdict as to him? Let us briefly notice the matters argued in this regard.

It is insisted on behalf of Claytor that the bill of particulars is insufficient, and that the court should have required the filing of a more definite one, as he demanded. We shall say little about this. The account filed is one in detail and is quite as full as is ordinarily required. Further, the demand for a more particular account came late, just at the calling of the case for trial. There had been ample opportunity open to Claytor to find fault with the bill of particulars at an earlier time. From the record of the case as a whole, it is clear that no prejudice came to him because of the character of the bill of particulars to which he tardily objected.

A number of letters received by plaintiff through the mail, purporting on their face to have been written by Claytor to plaintiff in reference to the account, were admitted in evidence over Claytor's objection. These letters, if authorized by Claytor, plainly tend to prove his liability. It came out in the evidence, however, that only one of the letters is in his handwriting. Plaintiff offered no direct proof that the letters had been written by Claytor. They do not necessarily appear to be reply letters to those proved to have been written to Claytor by plaintiff. Yet they all clearly purport to be in relation to the account sued on. Some of them purport

to have been accompanied by checks in payment on the account. Checks, drawn by Claytor in favor of plaintiff, and paid by the bank for him, were produced upon plaintiff's demand and introduced in evidence. For every check mentioned in these letters as transmitted, there is among the checks so produced by Claytor one corresponding in date and amount. True, plaintiff did not prove that it received with the letters the checks mentioned in them, and that the checks so received were among the ones Claytor produced. But the paid checks themselves prove that they were in some way transmitted from Claytor to plaintiff. Is there not a strong inference that the letters purporting to transmit checks actually did so, actually came from Claytor to plaintiff? The contents of all the letters relate to the account and are so consistent with truthful relation thereto, that it is most improbable indeed that anyone could have forged them. It would be practically impossible for one to forge a continuous course of letters like these and make all of them so intelligibly to fit, as these letters do, the situation and circumstances existing when they were written. The contents of the letters in every instance appear to be just such as Claytor would in all probability write under the circumstances proved as existing at the time of the writing. It appears in testimony that Claytor himself could scarcely write. Do not the contents of the letters, considered in connection with the proved circumstances, and the fact that the letters purport to come from an illiterate, go so far toward proving their authenticity as to make them admissible before the jury? We are of opinion that, under the circumstances of the case with which they were connected, they were admissible as tending to prove their own authenticity. In 3 Wigmore on Evidence, sec. 2149, is this practical suggestion: ''It ought to be conceded that, where there is no direct testimony to the act of execution or sending by an *illiterate,* the evidence to be drawn from the contents should, in some situations, be allowed to go to the jury.  *  *  *  The case of an amanuensis, using a *type-writing machine,* presents a similar impossibility, whenever the signature (as sometimes happens) is also typewritten or stamped; and it would seem that a similar necessity justifies

a resort to evidence from contents.'' The point is thus mentioned in an encyclopedic work: ''A letter not in the handwriting of the alleged sender may be looked into for internal evidence of the source from which it came, as for instance the fact that it relates to matters which are known only to the alleged sender.'' 17 Cyc. 410. In *Deep River National Bank's Appeal,* 73 Conn. 341, the court held: ''Prima facie proof of the authenticity of letters is all that is required to render them admissible in evidence.'' In that case credence was given to the fact that the contents of the letters themselves, viewed with the circumstances of the case, indicated their authenticity. The court also said: ''To render them admissible it was not necessary that it should be proved beyond a reasonable doubt that they were the letters of Davis, but only to introduce evidence which, when uncontradicted, would satisfy all reasonable minds of that fact.'' In an early case the following, to our minds, was most sensibly expounded: ''Letters, which were received through the post-office, may be submitted to the jury, to infer whether they were written by the direction of the plaintiff, who cannot write, on internal evidence; such as that they state facts which could only be known to the plaintiff, or contain many circumstances which could relate to no other person.'' *Singleton* v. *Bremar,* 1 Harp. (S. C.) 201. The letters were properly admitted. And how in practical sense was Claytor prejudiced by their introduction? He had full opportunity to repel the prima facie case of authenticity. He was present, but did not controvert the same.

Proper foundation was laid for the introduction of carbon copies of the letters which plaintiff had written to Claytor in reference to the account, and the court did not err in admitting those copies in evidence. Claytor was asked to produce the originals, but responded that he was unable to do so. It was sufficiently proved that the originals were written and put in due course of mail. It is certainly unnecessary to dilate on the presumption which follows.

The bill of particulars contains items giving credit for notes executed to plaintiff by Claytor individually for portions of the account, and items charging back the notes with protest

fees because of Clayton's failure to pay them. It is submitted that it was error to allow the introduction of the notes in evidence — that they were individual obligations of Claytor, which had discharged the portions of the account they covered. So it is said that they could not be admitted as evidence of indebtedness owing by the firm. But it does not appear that the notes operated to discharge the firm. There is no showing that plaintiff took from Claytor the notes in absolute discharge of any portion of the account. "The prevailing doctrine is that the separate note of a partner for a partnership debt is not presumably an extinguishment or satisfaction thereof, and that the burden of proof is upon the party alleging it to show that such effect was intended." Daniel on Negotiable Instruments, (5th ed.), sec. 1300. The protested notes were properly admitted. They tended not only to establish the account but also to establish Claytor's connection with it.

Much has been said in the argument about the failure of plaintiff to prove the account. Objection is made that the original books of entry were not produced and the account properly proved from them. We need not discuss the proper course to be pursued in proving an account from the books of original entry. That question, in the light of the evidence, is out of the case. Plaintiff proved admission on the part of defendants that the account was correct. Uncontroverted is the testimony that monthly statements, embracing the whole of the account, including in proper places the crediting of the notes and the recharging of the same, were duly transmitted to Claytor, on behalf of the firm, according to its direction and custom, and that he retained them without a single objection. No objection was made within such time as men would in reason ordinarily object under similar circumstances; in fact no objection was ever made. Prima facie it was thus established that the account was correct. Defendants did not seek to overthrow the case so made. The principle applicable is an old and firmly established one. *Ruffner* v. *Hewitt,* 7 W. Va. 586; *Shrewsbury* v. *Tufts,* 41 W. Va. 212; 1 Cyc. 375-378. Says Wigmore: "There has been a uniform rule, namely, that the failure to dispute an *account rendered,*

after the lapse of a reasonable time, amounts to an admission of its correctness.'' 2 Wigmore on Evidence, sec. 1073. This rule is peculiarly applicable as between merchants. That is the character of the account in this case.

From the record the substantial justice of the case is that plaintiff should recover the amount of the account from Claytor and Jones, as partners. The case was fairly tried, without error. Why the court should have set aside the verdict as to Claytor and rendered final judgment in his favor notwithstanding the verdict, we can not perceive. Wherein the judgment appealed from sustains the motion to quash the attachment, it will be affirmed; in other respects it will be reversed. and the judgment which the circuit court should have entered will be here entered. That judgment is that plaintiff recover of and from L. C. Claytor and J. M. Jones, partners trading and doing business under the style and firm name of J. M. Jones, the sum of four thousand and five dollars and twelve cents, with interest thereon from the 8th day of November, 1913, together with the costs incurred by plaintiff in the prosecution of its action.

*Reversed and Judgment Entered Here.*