[Civ. No. 7051.   Third Dist.   Jan. 30, 1945.]

WILLIS G. CHAPLIN, Appellant, v. BARBARA
SULLIVAN, Respondent.

Ernest Clewe and Peters, Millington & Clewe for Appellant.

Hubert I. Townshend for Respondent.

ADAMS, P. J.—Plaintiff brought this action to quiet title to a quarter section of land in Butte County. Defendant Barbara Sullivan appeared, and defendant Webster defaulted. No other defendants were served with process, and the action was dismissed as to them. Mrs. Sullivan, in her answer, claimed an interest in the property described, alleging that on August 23, 1934, while it was owned by Dora B. Webster, the latter entered into a contract to sell 40 acres of said land to J. N. McFate, and that on April 16, 1936, McFate assigned his rights in the contract to this defendant. She further alleged that after making the said contract with McFate, Dora B. Webster died, Edward F. Webster was appointed administrator of her estate by a probate court in Missouri, on May

8, 1935, that said administrator made demand upon her for payment of installments due under the contract, and that she paid them to him up to the time of the filing of this action, since which time she had withheld payments, not knowing to whom to pay them, but that she was ready, able and willing to pay the balance due to the party entitled thereto.

At the trial of the action it was stipulated that the only issues of fact that need be determined by the court were what moneys had been paid on the contract by or on behalf of McFate, or by or on behalf of defendant Sullivan, to such person and in such manner as did or do constitute in law a discharge *pro tanto* of the obligation in said contract, and what sum remained owing to plaintiff as the successor in interest of Dora B. Webster.

At the conclusion of the trial the court made findings in favor of defendant Sullivan, as to the 40-acre tract, gave judgment to plaintiff quieting his title to the remainder of the quarter section, and provided, pursuant to stipulation of the parties, that defendant Sullivan should have 60 days within which to pay to plaintiff all payments accruing under the contract from October 22, 1938, to February 26, 1940, on her failure so to do plaintiff to become entitled to a decree quieting his title, and on her making said payments the action to be dismissed as to her insofar as the same pertains to the 40-acre tract in controversy.

Motion for a new trial was denied and plaintiff has appealed from the portion of the judgment in favor of defendant Sullivan.

Appellant in his brief concedes the following to be facts in the case. Dora B. Webster, the wife of Edward F. Webster, a resident of Missouri, was the owner of the entire tract. On August 23, 1934, Mrs. Webster entered into a contract with McFate to sell to him the 40 acres in controversy for $2,000, payable in six monthly installments of $30 each, and 91 monthly installments of $20 each, without interest prior to maturity, the contract providing that the vendee should pay all taxes, liens and assessments, pay for insurance on improvements and assign the policy to the vendor. Said contract also provided that in the event of the failure of the vendee to make the payments provided for, for a period of one month from the date same became due, all moneys previously paid should become forfeited and the contract should terminate without further notice unless extended by the

vendor. Immediate possession of the property was given to the vendee. Mrs. Webster conveyed the entire quarter section to plaintiff, subject to the contract of sale to McFate, by deed dated March 9, 1935, recorded April 25, 1935. On April 16, 1936, McFate assigned his contract to Mrs. Sullivan, said assignment being recorded July 16, 1936. On April 15, 1935, Mrs. Webster died and her husband was appointed administrator of her estate by a Missouri court. On April 15, 1936, Mrs. Sullivan mailed to Webster a cashier's check for $280, the amount of installments called for by the contract from March, 1935, to April, 1936, inclusive, and thereafter paid to Webster the sums falling due up to October 22, 1938, but made no payments to plaintiff.

At the trial plaintiff stipulated that the copy of the contract be deemed in evidence, introduced his deed from Mrs. Webster, and rested. He produced no evidence that plaintiff had ever notified either McFate or defendant Sullivan of his deed from Mrs. Webster, or. that he had ever notified either to make payments under the contract to him, or that he had not received payment of installments as they became due. The trial court found that the installments and other payments were paid in full to October 22, 1938, that defendant was entitled to credit therefor toward the satisfaction of payments under the contract, and that no default existed at the time of the commencement of the action; that defendant Sullivan had no information putting her on notice that payments on the contract should be made to plaintiff, that Webster advised Mrs. Sullivan that payments should be made to him (Webster), and that no demand or notice that payments be made to plaintiff was made until about the time of the commencement of the action; that plaintiff stood by knowing that payments were being made to Webster, and failed to assert a forfeiture under the contract or to advise defendant that he was the owner of the property and claimed the right to receive payments; that plaintiff having failed to assert his rights over a long course of time has elected to recognize the payments due under said contract made up to and including October 22, 1938, as valid toward satisfying the terms of the contract and has waived his right to declare that such payments so made to and including October 22, 1938, are or constitute a default.

Appellant contends that these findings are not supported by competent evidence, and that the trial court committed

reversible error in admitting certain exhibits offered by defendant. We shall consider the latter contention first.

■ Defendant's Exhibit "B" purports to be a statement of installment payments due under the contract as of April 20, 1936. Defendant testified that it came from Webster and that she paid the amount therein shown to be due. Appellant admitted that defendant had received this statement but objected to it as immaterial because Webster had no right to receive the payments. Inasmuch as appellant concedes in his brief that defendant paid this balance of $280, being the amount of the installments called for by the contract from March, 1935, to April, 1936, inclusive, we cannot see how the introduction of the statement in any way prejudiced appellant. He argues that it was offered as evidence that all installments maturing prior to March 1, 1935, had been paid, and that it does not constitute proof of such fact. But there was no evidence that such prior installments were not paid, and, regardless of the document, from the receipt for later installments the presumption arises that the earlier ones had been paid. (Code Civ. Proc., § 1963, subd. 10.)

■ Defendant's Exhibit "C" purports to be a letter from Webster to McFate dated April 20, 1935, advising of Mrs. Webster's death and informing McFate that all further business should be transacted with Webster. It acknowledged receipt of $20 for February payment, and enclosed a newspaper clipping regarding Mrs. Webster's death. Appellant objected to the introduction of this letter on the ground that it was incompetent, irrelevant and immaterial, that there was no "identification of the fact that it was actually written by Mr. Webster himself, and is hearsay so far as plaintiff in this action is concerned." Mrs. Sullivan testified that McFate had given her this letter among others in regard to the property; also that she herself had had correspondence with Webster and knew his signature from the signature on letters she had received and the endorsement on checks which she had sent him. This letter (and others subsequently offered) was admitted subject to motion to strike, but no such motion was thereafter made. In view of the testimony of Mrs. Sullivan that she knew Webster's signature, and the presumption of identity of person arising from identity of name (Code Civ. Proc., § 1963, subd. 25), and in view of appellant's concession in his brief that Edward F. Webster was the husband of Dora B. Webster and was appointed

administrator of her estate, and in view of the contents of the letter itself in relation to other offered in evidence, we think that there was sufficient proof that the letter was signed and sent by Webster. ■ Also, since appellant also relies upon a copy of a letter dated September 7, 1935, to McFate, signed Edward F. Webster (Plaintiff's Ex. 2), which he introduced without proof that the original of same was signed by Webster or mailed to or received by McFate, he is in no position to contend that he was prejudiced by the admission of said Exhibit "C."

■ Defendant's Exhibit "D," a letter dated May 9, 1935, purporting to be written to McFate and signed by Webster, was accompanied by a clipping from a Kansas City newspaper containing a notice of the death of Mrs. Webster. It made reference to a copy of a letter from a Miss Collier which the writer stated he had received from McFate, and then stated "any attempts by Miss Collier or Mr. Chaplin to interfere in the matter of Mrs. Webster's estate will be met with prosecution." It is sufficient to say that in view of Mrs. Sullivan's testimony as to her knowledge of Webster's signature, and, in particular, the fact that appellant in his brief relies upon the reference in this letter to Chaplin as constituting notice to defendant that Chaplin was the owner of the premises, the admission of same was not prejudicial to appellant, and he is in no position to contend that it was.

Defendant's Exhibit "E" was a letter from Webster to McFate, also dated May 9, 1935, and was accompanied by a newspaper clipping containing legal notice of the issuance to Edward F. Webster of letters of administration of the estate of Dora B. Webster. It stated: "I trust that this will make it clear to you where and to whom any future moneys are to be paid"; also, "I desire to continue Mrs. Webster's agreement with you. . . . As to future payment, I have no desire to crowd you, and will leave to you the fulfillment of the terms of the contract." Exhibits "F" and "G" were letters to Mrs. Sullivan signed by Webster, acknowledging receipt of installment payments of $20 each for January, February, March and April, 1937.

Inasmuch as appellant concedes that Webster was appointed administrator of his wife's estate, and that defendant paid to Webster the sums falling due up to October 22, 1938,

even if it were assumed that these letters were erroneously admitted as being without sufficient identification, no injury to appellant has resulted therefrom. Furthermore, it is said in 9 American Law Reports 984, that the authorities generally concede that under proper facts and circumstances the authenticity or genuineness of a letter may be established by indirect or circumstantial evidence, without resort to proof of handwriting or typewriting. Among other things upon which reliance may be placed is that a letter states facts which could only be known to or relate to the purported writer.

In *Maynard* v. *Bailey*, 85 W.Va. 679 [102 S.E. 480, 481, 9 A.L.R. 981], the court said that the genuineness of a letter may be shown in more than one way; that "like any other material fact, the authenticity of a letter may be established by circumstantial evidence. If its tenor, subject-matter, and the parties between whom it purports to have passed make it fairly fit into an admitted or proved course of correspondence and constitute an evident connecting link or part thereof, these circumstances justify its admission." (With citations.)

In *Fayette Liquor Co.* v. *Jones*, 75 W.Va. 119 [83 S.E. 726], it was held that letters received in a continuous course, not in the handwriting of an alleged illiterate sender, but relating to matters in suit and so consistent with truthful relation thereto as to make it improbable that anyone could have forged them, may be admitted so that the jury may, from their contents, determine their genuineness. (Also see *Union Cent. Life Ins. Co.* v. *Washburn*, 158 Ala. 169 [48 So. 475]; *Sun Mfg. Co.* v. *Egbert*, 37 Tex.Civ.App. 512 [84 S.W. 667]; *Fielding* v. *Iler*, 39 Cal.App. 559, 563 [179 P. 519]; *Lancaster* v. *Ames*, 103 Me. 87 [68 A. 533, 125 Am.St.Rep. 286, 17 L.R.A.N.S. 229]; *Chicago B. & Q. R. Co.* v. *Roberts*, 10 Colo.App. 87 [49 P. 428]; *Bowker Fertilizer Co.* v. *Cluskey*, 124 Me. 384 [130 A. 209, 210]; *Leunis Co.* v. *Singer*, 102 N.J.L. 68 [130 A. 457]; *Locke* v. *Woodman*, (Mo.App.) 225 S.W. 352; *International Harvester Co.* v. *Campbell*, 43 Tex. Civ. App. 421 [96 S.W. 93, 95].)

Whether or not these letters were written by Webster presented a question of fact for the trial court and we think that there was sufficient evidence to support its apparent conclusion that they were authentic, which conclusion is binding upon an appellate court.

■ Coming now to appellant's contention that the evidence is insufficient to sustain the findings of the trial court, he claims that the record discloses that when defendant took her assignment from McFate she had both "actual and legal" notice that plaintiff was the owner of the contract and hence the only person entitled to receive payments; that at any event she was aware that Webster's right to receive them was disputed; that with the slightest effort on her part she would have ascertained that plaintiff was the true party in interest; but that she deliberately chose to make them to Webster who had no right to receive them.

We have carefully read the record in this case and are unable to say that there was insufficient evidence to sustain the court's findings, or that the evidence compels the conclusions of appellant as above set forth. As to defendant's alleged notice, appellant in his brief states that he "has not argued that the recordation [of deed of Mrs. Webster to plaintiff] in and of itself did constitute such notice," but that for other reasons she had both actual and constructive notice. He relies upon the reference to "Mr. Chaplin" in defendant's Exhibit "D," and the letter of Webster to McFate (Plaintiff's Ex. 2) in which Webster said: "I note you have another letter of Willis G. Chaplin, and I would thank you for a copy of it for my files, or if it would save you time, you may forward it to me and I will have it copied and return it to you. Mr. Chaplin and Miss Collier who first induced Mrs. Webster to make a will, which to date has not been made of record and I have asked a citation from the court to require them to file, and who afterward induced her to make a deed to supplant the will which deed they filed in Butte County, do not seem to understand that in both cases, while probably attempting to convey the whole Quarter Section, excepted the fourth which was under contract for sale to you, and my attorneys both here and in California advise me that no disposition of the fourth you are interested in is conveyed but belongs to me, both as community property and by inheritance. As administrator I have filed a surety bond which will protect you in any transactions you have with me. Miss Collier and Mr. Chaplin have taken no steps to qualify legally to handle matters and if you have occasion to write them I think it would be best to advise them to take any matters up with me, as they will fianlly have to, and there is no reason

for them to annoy you or to try to take advantage of your consideration.'' Also he relies upon a copy of a letter to Walsh & Aylard, Kansas City, by McFate, dated August 7, 1935, in which it is stated: ''*A*mediately after the death of Dora B. Webster I received Notice of the appointmen_ of Edward F. Webster as administrator of her estate. The administrator instructed me to not pay any money on the Brush Creek Property to Mr. Willis G. Chaplin. I stand ready to make payments up to date when I know who to make them to, which of course will be established in final settlement of the estate. So far I haven't done anything to protect myself on this deal, however my contract is of record. If you will get the administrator to advise me to make the payments to Willis G. Chaplin I would be glad to do it, as it make no*t* difference to whom I pay the money.''

On the other hand, Mrs. Sullivan testified that she did not know plaintiff, had never seen him or communicated with him; that McFate never mentioned the name Chaplin to her and that she had never heard of the firm of Walsh & Aylard; that McFate told her that Webster was administrator of Mrs. Webster's estate and that he was making payments to Webster and that she should do likewise; that McFate had told her that ''there was a pile of them'' trying to interfere with Webster's handling of affairs, but that she saw in the paper that he was the administrator, and that she received the letters and took it for granted that he was the rightful owner; that she never received any notification to make payments to anyone other than Webster until she received a letter from Mr. Clewe, plaintiff's present attorney, dated October 22, 1938; that Chaplin never wrote her any letters and she never knew anything about the deed to him or his claim until she received the letter from Mr. Clewe. It is therefore apparent that whether Mrs. Sullivan had notice or was aware that plaintiff was the owner of the contract and the only person entitled to receive payments, or whether she had sufficient knowledge of facts to put her on notice, were matters for the trial court, and there being a conflict in the evidence its determination must be held conclusive upon this court.

As to the finding that plaintiff failed to assert his rights under the contract for a long course of time and elected to recognize the payments due under the contract as valid, and had waived his right to declare a default under the contract because of payment to Webster of the installments so paid,

we think that this conclusion, too, was one which the trial court was justified in drawing, under the evidence.

Plaintiff took the land subject to the contract with McFate, which, as his deed stated, called for monthly payments; yet he never made demand upon the vendee or his assignee that payments should be made to him until the letter of October 22, 1938, was written to Mrs. Sullivan by Mr. Clewe. Appellant obviously knew that Webster was administrator of Mrs. Webster's estate, and he must have known either that Webster was collecting the payments or that the contract was in default; he did not testify in this action, and there is no evidence that the payments made to Webster were not subsequently received by him; he does not appear to have made any inquiry about the payments until the letter of his attorney was written in October, 1938, and in that letter no forfeiture was claimed; on the contrary, the letter stated: "Mr. Chaplin desires either to have the transaction completed or else to clear his title to the land. . . ."

In *Lucy* v. *Davis*, 163 Cal. 611, 616 [126 P. 490], the court said that where the assignee of a contract of sale failed to notify the vendee of the transfer of the contract to the assignee he was not in a position to complain of respondent's delay in tendering payments due after the assignment.

That the law helps the vigilant before those who sleep on their rights is a maxim of jurisprudence (Civ. Code, § 3527), as is the rule that where one of two persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer (Civ. Code, § 3543). ▮ Plaintiff has come into court with an equitable action, to wit, a suit to quiet title, and in such action must rely upon the strength of his own title and not upon the weakness of that of his adversary; ▮ and where, as here, a party who takes title to land subject to a contract entered into with another for the sale of a portion thereof fails to show that he has been vigilant in effecting a forfeiture of such contract for what he contends constituted defaults thereunder, and suffers the vendee to make payments to another in apparent good faith, he cannot with reason call upon a court of equity to aid him, especially where, as here, such court finds that the vendee under the contract and his assignee in possession have done all that a reasonable person was called upon to do under the circumstances. Forfeitures are not favored, and the bur-

den of proving facts creating a forfeiture rested upon plaintiff. (*Riedman* v. *Barkwill,* 139 Cal.App. 564, 567 [34 P.2d 744]; *Reclamation District* v. *Van Loben Sels,* 145 Cal. 181, 184 [78 P. 638].)

The judgment is affirmed.

Peek, J., and Thompson, J., concurred.

A petition for a rehearing was denied February 24, 1945, and appellant's petition for a hearing by the Supreme Court was denied March 29, 1945.