Filed 3/22/23  Cotzomi v. Universal Protection Service CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

|  |  |
|---|---|
| PABLO COTZOMI,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>UNIVERSAL PROTECTION SERVICE, LP et al.,<br><br>    Defendants and Appellants. | A164301<br><br>(Alameda County<br>Super. Ct. No. RG20080769) |

Defendants Universal Protection Service, LP (UPS LP), Universal Protection Service, LLC, Allied Universal Security Services, and Allied Universal Security Services, LLC (collectively the Allied defendants) appeal from the trial court's order denying their motion to compel arbitration of this action filed by plaintiff Pablo Cotzomi.  The Allied defendants contend the trial court's decision rested on an erroneous legal assumption, to wit, that direct evidence of plaintiff's execution of the electronic signature on the alleged arbitration agreement was necessary to authenticate the agreement.  On the record before us, we conclude the court erroneously declined to consider the circumstantial value of the Allied defendants' evidence indicating that plaintiff executed the electronic signature on the arbitration agreement.  We therefore reverse the order and remand for further proceedings consistent with this opinion.

1

# FACTUAL AND PROCEDURAL BACKGROUND

## A. Complaint and Motion to Compel Arbitration

Plaintiff filed a putative class action against the Allied defendants and Point to Point Global Security, Inc. (P2P) alleging violations of the Fair Credit Reporting Act (FCRA) (15 U.S.C. § 1681 et seq.). The lawsuit arises out of defendants' alleged failure to provide plaintiff with proper disclosures and a summary of rights under FCRA at the time of his hiring.

The Allied defendants moved to compel arbitration, arguing that plaintiff agreed to arbitrate any claims he had against them as a condition of his employment. In support of their motion, the Allied defendants submitted the declaration of UPS LP's regional human resources director, Peggy Grzywacz, who stated that her responsibilities included onboarding employees and conducting new hire orientations. Based on her review of plaintiff's personnel records, Grzywacz stated on information and belief that plaintiff became employed with UPS LP in May 2019 following UPS LP's acquisition of the security firm P2P.[1] UPS LP began transitioning former P2P employees during two orientation sessions held on April 25, 2019. According to Grzywacz, plaintiff and other former P2P employees attended an April 25 orientation, during which human resources coordinators provided each employee with a laptop computer and helped them work through an online onboarding packet administered by Emptech, a third-party workforce management services provider. The onboarding packet included the Allied defendants' "standard Arbitration Agreement," a copy of which was attached to Grzywacz's declaration.

---

[1] As Grzywacz explained, Universal Protection Service, LLC is a direct subsidiary of UPS LP, while Allied Security Services, LLC and Allied Universal Security Services are fictitious names under which UPS LP does business.

2

The arbitration agreement states in pertinent part: "By continuing employment with [UPS LP], you agree to the terms of this Agreement unless you affirmatively opt out of the Agreement by returning the opt-out form provided at the end of this Agreement within 30 days of receipt of this Agreement." (Bold type omitted.) With exceptions not relevant here, the agreement to arbitrate applies to "all claims or causes of action that the Employee may have against [UPS LP] . . . which could be brought in a court of law" and contains a class and collection action waiver. At the end of the agreement is a section entitled "Acknowledgment of Receipt of Arbitration Policy and Agreement" that displays plaintiff's printed name under the heading "Signed Name," an Internet Protocol (IP) address[2] of 10.113.3.125, and the date and time of "4/25/2019 9:16:46 AM." (Bold type omitted.)

Grzywacz further stated "on information and belief from [her] review of the documents [that] this Arbitration Agreement was signed and submitted by [plaintiff]," and that plaintiff did not opt out of the arbitration agreement before it became effective in May 2019. Attached to Grzywacz's declaration was a sign-in sheet purporting to show that plaintiff attended the April 25 orientation and a business record "from Emptech's employer-facing portal, Optima, summarizing the onboarding documents reviewed and e-signed by [plaintiff] on April 25, 2019," including the "Arbitration Policy and Agreement."

---

[2] An IP address is a numeric identifier for a computer connected to the Internet "consist[ing] of 'four sets of numbers separated by periods' [citation], such as '12.34.56.78.' 'IP addresses function much like Social Security numbers or telephone numbers: each IP address is unique and corresponds to a specific entity connected to the Internet.' " (*Kleffman v. Vonage Holdings Corp.* (2010) 49 Cal.4th 334, 337.)

3

In opposition to the motion, plaintiff argued that the Allied defendants failed to prove the electronic signature on the arbitration agreement was his. Plaintiff acknowledged that he "was present during the orientation" but stated in his declaration that he did not recall seeing, reviewing, or signing "any documents" at the April 25 orientation session, including "any document entitled Arbitration Policy and Agreement or any other arbitration agreement." Plaintiff further asserted that had he been provided with an arbitration agreement, he would have refused to sign it or opted out as he has done in the past. Plaintiff objected to the Grzywacz declaration, arguing she lacked personal knowledge to authenticate his electronic signature and failed to authenticate the documents she relied upon in making her assumptions.

In reply, the Allied defendants submitted the declaration of Lisa Crane, a human resources coordinator for UPS LP who was present at the April 25 orientation. According to Crane, the orientation session was conducted in a large conference room, and she and two colleagues were seated in front of two rows of tables where the employees sat. Two employees were seated at each table and were provided with computers to access, review, and sign the onboarding documents. To access those documents on Emptech, employees had to enter their unique employee identification numbers and their Social Security numbers. Based on her review of plaintiff's personnel records, Crane stated on information and belief that plaintiff began reviewing his orientation packet at around 9:09 a.m., and that he electronically signed the arbitration agreement at 9:16 a.m. Attached to the Crane declaration was a register of documents that plaintiff purportedly signed on Emptech, including the arbitration agreement and an "Emergency Contact Form" that appeared to contain contact information for plaintiff's wife (e.g., her name, address, and two different telephone numbers). Each of the onboarding documents

4

contained date and time stamps purporting to show when they were electronically signed.[3]

Crane further stated that during the April 25 orientation, her colleagues periodically surveyed the room and monitored employee progress, and she "[did] not recall seeing any employees moving about the room except to go to the restroom." Based on her review of the arbitration agreement, Crane believed the document was signed and submitted by plaintiff. Crane stated her belief was "supported by the requirement that all prospective [UPS LP] employees must enter their unique employee ID number and social security number to access Emptech and review [UPS LP's] new-hire onboarding packet. Therefore, an electronic signature in the name of 'Pablo Cozomi [*sic*]' could only have been placed on the e-signed Arbitration Agreement by a person using [plaintiff's] unique employee ID and social security number. Moreover, [UPS LP] does not have a practice of sharing an employee's unique ID number with other employees." Crane further stated she was unaware of any complaints or allegations that electronic signatures were falsified during the onboarding process, which would "be extremely difficult due to the unique employee ID and social security numbers required to generate the electronic signatures at the same time period in which the employee is present at the onboarding meeting" and would "be a terminable violation of [UPS LP's] policies and process."

Plaintiff was granted leave to file a surreply, and he also filed evidentiary objections to the Crane declaration.

---

[3] All of the onboarding documents attached to the Crane declaration reflected a date of "4/25/2019," with different times on that day. For instance, the arbitration agreement was time stamped "9:16:46 AM," while the emergency contact form was time stamped "9:19:25 AM."

**B. Trial Court's Ruling**

After hearing argument, the trial court issued its order denying the motion to compel arbitration. The court first found the Grzywacz declaration "was not based on [Grzywacz's] personal knowledge, and, although she described the documents as business records, she failed to establish the requisites for admission of such records, including the 'mode of preparation' of such records." Accordingly, the court sustained plaintiff's objections "on these grounds" and found that Grzywacz failed to "adequately authenticate the arbitration agreement as signed by plaintiff."

Turning to the Crane declaration, the trial court sustained plaintiff's objections for lack of personal knowledge "as to the portions of the declaration that purport to authenticate plaintiff's signature on the documents." Relying on *Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836 (*Ruiz*), the court found that Crane's presence "did not provide her personal knowledge that plaintiff in fact executed the electronic signature. The time stamps likewise are not helpful since they beg the question of whether plaintiff executed the electronic signature." The court also rejected the Allied defendants' reliance on the emergency contact form because "defendants do not establish how this was filled out by plaintiff, and, in any case, it was not the arbitration agreement." Finally, the court rejected the Allied defendants' request to present Crane's oral testimony, as "Crane's lack of personal knowledge is manifest in her declaration."

Based on the foregoing, the trial court determined the Allied defendants had not met their burden of proving the existence of a valid agreement to arbitrate. This appeal followed. (Code Civ. Proc., § 1294, subd. (a).)

6

"Under section 1281.2, a trial court must grant a motion or petition to compel arbitration only 'if it determines that an agreement to arbitrate the controversy exists.'  The court makes this determination in a summary process.  [Citation.]  '[T]he trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination.' " (*Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 164 (*Gamboa*).)

"The burden of persuasion is always on the moving party to prove the existence of an arbitration agreement with the opposing party by a preponderance of the evidence," but the burden of production involves a three-step process.  (*Gamboa, supra,* 72 Cal.App.5th at pp. 164–165.)  At the first step, the moving party bears the burden of producing prima facie evidence of a written agreement to arbitrate, either by stating the provisions verbatim, or "by attaching a copy of the arbitration agreement purportedly bearing the opposing party's signature."  (*Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1060 (*Espejo*).)  The moving party "is not required to authenticate an opposing party's signature on an arbitration agreement as a preliminary matter" (*Ruiz, supra,* 232 Cal.App.4th at p. 846, italics omitted), and "the court is only required to make a finding of the agreement's existence, not an evidentiary determination of its validity" (*Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215, 219).  If the moving party meets its initial burden of production, the burden shifts to the party opposing arbitration to produce evidence challenging the authenticity of the agreement.  (*Gamboa*, at p. 165.)

If that burden is met, "the moving party must establish with admissible evidence a valid arbitration agreement between the parties." (*Ibid*.)

" ' "There is no uniform standard of review for evaluating an order denying a motion to compel arbitration." ' " (*Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1066 (*Fabian*).) For instance, when an appeal challenges the trial court's finding that the moving party failed to carry its burden of proof, " ' "the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " ' " (*Id.* at p. 1067; see also *Trinity v. Life Ins. Co. of North America* (2022) 78 Cal.App.5th 1111, 1122, 1125.) This is because a reviewing court may not reweigh the evidence or make its own determination of credibility, and instead must view all factual matters favorably in support of the judgment. (*Fabian*, at p. 1067.) But where, as here, the appeal challenges a purely legal decision by the trial court that affirmatively appears on the record—namely, the court's legal assumption that direct evidence of signature authentication was required—we independently review that claim of legal error. (See *Espejo*, *supra*, 246 Cal.App.4th at pp. 1057–1058 [denial of petition to compel arbitration is generally reviewed for abuse of discretion, but review is de novo where pure question of law is presented].)

Here, there appears to be no dispute that the Allied defendants met their initial burden on the motion to compel. Although the trial court excluded portions of Grzywacz's declaration purporting to authenticate the arbitration agreement, the Allied defendants were not required to authenticate the agreement at this initial step. (*Ruiz*, *supra*, 232 Cal.App.4th at p. 846.) At this stage, UPS LP's regional human resources

8

director Grzywacz was a competent witness for purposes of adducing a copy of the Allied defendants' standard arbitration agreement, which sufficed as a prima facie showing of an agreement to arbitrate.

There is likewise no dispute that plaintiff met his burden to challenge the authenticity of the arbitration agreement. Through his declaration, plaintiff stated that he did not recall seeing, reviewing, or signing the purported arbitration agreement, and that he would have refused to sign such an agreement had he been provided one. Courts have affirmed this method of satisfying an opposing party's responsive burden on a motion to compel arbitration. (See *Gamboa*, *supra*, 72 Cal.App.5th at p. 167; *Ruiz*, *supra*, 232 Cal.App.4th at p. 846.)

Thus, the dispute in this appeal centers around the Allied defendants' ultimate burden of persuasion to establish a valid arbitration agreement between the parties. "Authentication of a writing means (a) the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is or (b) the establishment of such facts by any other means provided by law." (Evid. Code, § 1400.) "The means of authenticating a writing are not limited to those specified in the Evidence Code. [Citations.] For example, a writing can be authenticated by circumstantial evidence and by its contents." (*People v. Skiles* (2011) 51 Cal.4th 1178, 1187 (*Skiles*).) Circumstantial evidence "is testimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts

9

sought to be proved." (*Ajaxo Inc. v. E\*Trade Group Inc.* (2005) 135 Cal.App.4th 21, 51.)[4]

An electronic signature has the same legal effect as a handwritten one. (See Civ. Code, § 1633.7, subd. (a).) "An electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." (Civ. Code, § 1633.9, subd. (a).) "[T]he burden of authenticating an electronic signature is not great." (*Ruiz, supra*, 232 Cal.App.4th at pp. 844–845.)

Taken together, these authorities illustrate that on a motion to compel arbitration, an arbitration agreement may be authenticated by facts reasonably deduced from the evidence indirectly showing that an electronic signature on the agreement was the act of the opposing party. We conclude a trier of fact could reasonably have found this burden satisfied on the record here. As set forth in Crane's declaration, the attendees at the April 25 orientation were each furnished with a computer to access an online portal where they could review and complete an onboarding packet that included the arbitration agreement. The portal could be accessed only by someone using an employee's unique identification number and Social Security number, and UPS LP had no practice of sharing these numbers with its employees. Plaintiff concedes he attended the April 25 orientation session, and a sign-in sheet for the orientation reflects his presence from 8:20 a.m. to 10:00 a.m. All of the onboarding documents purportedly signed by plaintiff

---

[4]     In contrast, " 'direct evidence' means evidence that directly proves a fact, without an inference or presumption, and which in itself, if true, conclusively establishes that fact." (Evid. Code, § 410.)

10

bore date and time stamps for April 25, 2019, between 9:09 a.m. and 9:31 a.m., as well as the same IP address. In other words, the onboarding documents appeared to be executed using the same computer and on the same day and around the same time that plaintiff was indisputably at the orientation. During that session, Crane was seated at the front of the room and saw no unusual activity. From this evidence, one could reasonably deduce that during the April 25 orientation, plaintiff was the person who used plaintiff's unique credentials to access and electronically sign the arbitration agreement at the date and time indicated on the agreement.

In concluding the Allied defendants failed to carry their burden, the trial court found that Crane's presence at the April 25 orientation "did not provide her personal knowledge that plaintiff in fact executed the electronic signature," and that the date and time stamps on the arbitration agreement simply "beg[ged] the question of whether plaintiff executed the electronic signature." But because case law makes clear that circumstantial evidence is sufficient to authenticate a signature (*Skiles*, *supra*, 51 Cal.4th at p. 1187), Crane's personal knowledge of plaintiff's execution of the signature—that is, *direct* evidence of the signature's authenticity—was not required for the Allied defendants to authenticate the arbitration agreement.

On this score, the trial court seemed to dismiss the relevance of the emergency contact form on the grounds that the Allied defendants "[did] not establish how this was filled out by plaintiff, and, in any case, it was not the arbitration agreement." A trier of fact, however, could reasonably deduce that plaintiff filled out the form because it contained specific information regarding his wife (see *Chaplin v. Sullivan* (1945) 67 Cal.App.2d 728, 734 [letter's authenticity may be established if it "states facts which could only be known to or relate to the purported writer"]), and it bore a date and time

11

stamp that coincided with plaintiff's undisputed presence at the April 25 orientation. And because the evidence suggests the emergency contact form was completed using the same computer and on the same day and around the same time as the arbitration agreement, the combined evidence had some tendency in reason to suggest that the electronic signatures on both documents were the acts of plaintiff. In declining to ascribe any relevance to the circumstantial evidence before it, the trial court erroneously restricted the legal scope of its discretion in evaluating whether the electronic signature was likely the act of plaintiff.

Citing *Ruiz*, *supra*, 232 Cal.App.4th 836, plaintiff nevertheless contends the Allied defendants' evidence failed to establish that no one other than plaintiff could have signed the alleged agreement or altered the documents. Plaintiff's reliance on *Ruiz* is misplaced. In *Ruiz*, the sum total of the evidentiary showing by the moving defendant (Moss Bros.) was an initial declaration of its business manager (Mary Main) "summarily assert[ing]" that the plaintiff electronically signed the arbitration agreement followed by a reply declaration in which Main generally stated that each Moss Bros. employee was required to log into the company's human resources system with a unique login and password to review and electronically execute the arbitration agreement. (*Ruiz*, at pp. 839, 840–841). As *Ruiz* explained, this showing was deficient because "Main did not explain how, or upon what basis, she inferred that the electronic signature on the 2011 agreement was 'the act of' Ruiz. [Citation.] This left a critical gap in the evidence supporting the petition." (*Id.* at p. 844; see also *Gamboa*, *supra*, 72 Cal.App.5th at p. 170 [declarant failed to provide specific details about circumstances of contract's execution and offered little more than bare statement that plaintiff entered contract].)

Here, in contrast, Crane provided a reasoned explanation for her belief that plaintiff was the person who electronically signed the arbitration agreement, and her conclusions were based on her personal knowledge of the details and events of the April 25 orientation and the onboarding procedures that she, as a human resources coordinator, was competent to explain, in conjunction with her review of the documentary records attached to her declaration. That Crane's ultimate conclusions involved deductions reasonably drawn from the evidence does not mean the showing suffered from fatal evidentiary gaps.

We also reject the sweeping principle plaintiff seeks to extrapolate from *Ruiz*—i.e., that a moving party must rule out the possibility that someone else signed an arbitration agreement in order to authenticate it. *Ruiz* applied no such standard, and the court otherwise reaffirmed that a party may satisfy the undemanding burden of authenticating an electronic signature "in any manner." (*Ruiz, supra*, 232 Cal.App.4th at pp. 844–845, citing Civ. Code, § 1633.9, subd. (a); Evid. Code, § 1400, subd. (a).)

To be clear, this was not a case in which plaintiff presented evidence that another person could have caused his electronic signature to appear on the arbitration agreement. For instance, in *Bannister v. Marinidence Opco, LLC* (2021) 64 Cal.App.5th 541, 544–545 (*Bannister*)—a case that also involved an online onboarding process[5]—the plaintiff (Maureen Bannister) submitted evidence that a human resources manager (Barbara Matson) visited the facility where Bannister worked and completed the onboarding process and arbitration agreement for her by asking for the necessary

---

[5] Unlike the instant case, however, *Bannister*'s onboarding process required no employee-specific user name to access the portal. (*Bannister, supra*, 64 Cal.App.5th at p. 546.)

information without showing Bannister what was on the computer.  (*Id.* at pp. 546–547.)  Bannister also presented evidence that Matson completed the onboarding process for other employees remotely and without their participation.  (*Id.* at p. 547.)  In affirming the denial of the motion to compel arbitration, Division Five of this court concluded this was "a classic example of a trial court drawing a conclusion from conflicting evidence."  (*Id.* at p. 545.)  That is, the trial court disbelieved Matson's account of the onboarding process and instead credited Bannister's evidence that Matson completed the onboarding process for her.  (*Id.* at p. 548.)  No similar conflict appears in the record here.  Plaintiff's declaration contains no suggestion that Crane or other human resources personnel completed his onboarding documents (or the onboarding documents for other employees without their knowing participation) during the April 25 orientation.  The trial court made no such factual finding, and the record is lacking in evidence to support an implied finding to that effect.

In further defense of the trial court's order, plaintiff contends the Allied defendants failed to submit evidence of "security measures" that would have prohibited others from accessing or affixing his electronic signature to the alleged arbitration agreement, as well as evidence of "the reliability of Emptech's policies, procedures, or practices" and the reliability of any "document retention or security protocols" in place.  No matter.  By statute, an electronic signature may be authenticated "in *any* manner, *including* a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable."  (Civ. Code, § 1633.9, subd. (a), italics added.)  Thus, while a showing of the efficacy of document security protocols is one way of demonstrating authentication, such a showing is not required in every case.

14

In any event, there was evidence in this case that the Allied defendants employed certain precautionary measures regarding the transmission and execution of the onboarding documents. As Crane explained, access to the onboarding packet on Emptech required knowledge of unique employee credentials that UPS LP did not share, and the presentation and review of the onboarding documents occurred in a controlled environment overseen by human resources personnel, with each employee receiving their own device to access Emptech. Of course, a finding as to the ultimate efficacy of these measures goes to the weight of the evidence. But for our purposes, it is sufficient to recognize that the Allied defendants presented circumstantial evidence supporting the reliability of the onboarding process in order to explain Crane's belief that it was plaintiff who executed the electronic signature on the arbitration agreement.

Finally, plaintiff contends the IP address evidence does not assist the Allied defendants because they "fail[ed] to provide any evidence as to what the IP address is associated with, the location of its origin, or any identifying information linking the IP address to [plaintiff] in any way." Although it is true that the Allied defendants did not provide detailed evidence regarding the IP address (e.g., testimony or documentation that directly linked the 10.113.3.125 address to the computer assigned to plaintiff at the April 25 orientation), we cannot say the evidence was incapable of supporting a reasonable inference in the Allied defendants' favor. Because the same IP address appeared on all of the onboarding documents in question, including the arbitration agreement and the emergency contact form that bore indicia of plaintiff's review and execution, the chain of inferences was at least capable of a reasonable conclusion that plaintiff executed all of the

15

onboarding documents, including the arbitration agreement, from the same computer during the April 25 orientation.[6]

In sum, we conclude the trial court erred in denying the motion to compel arbitration for want of direct evidence that plaintiff executed the electronic signature on the arbitration agreement. As for the appropriate disposition of this appeal, the Allied defendants ask that we reverse and remand with instructions to compel arbitration. However, the trial court made clear it found the absence of direct evidence dispositive despite the law's contemplation that the arbitration agreement could be authenticated by facts reasonably deduced from evidence indirectly showing that the electronic signature on the agreement was the act of plaintiff. (E.g., *Skiles*, *supra*, 51 Cal.4th at p. 1187.) As in other cases where the trial court's decision was based on an erroneous legal assumption, we conclude the proper disposition here is to reverse and remand so that the trial court may properly consider and weigh the circumstantial value of the Allied defendants' evidence in the first instance. (See, e.g., *Ramirez v. Balboa Thrift & Loan* (2013) 215 Cal.App.4th 765, 777; *F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 26.)

---

[6]    At oral argument, plaintiff's counsel maintained that the paramount issue in this case is not the trial court's refusal to consider the circumstantial evidence of signature authentication, but its evidentiary ruling that the Allied defendant's documents were inadmissible because Grzywacz and Crane did not have personal knowledge of the records themselves and failed to establish the foundational requirements for the business records exception to the rule against hearsay (Evid. Code, § 1271). We disagree, as it is reasonably clear from the record that the court did not exclude the Grzywacz and Crane declarations or their attached exhibits as inadmissible hearsay or for lack of personal knowledge of the records. Rather, the court explicitly found that the declarants lacked personal knowledge to authenticate plaintiff's signature on the arbitration agreement.

16

## DISPOSITION

The order denying the motion to compel is reversed, and the matter is remanded for further proceedings consistent with this opinion.  In the interests of justice, the parties shall bear their own costs on appeal.

FUJISAKI, ACTING P.J.

WE CONCUR:

PETROU, J.

RODRÍGUEZ, J.

*Cotzomi v. Universal Protection Services LP* (A164301)

17